## Miller's Estate.

*Wills—Undue influence—Mental incapacity — Evidence — Issue d. v. n.—Burden of proof—Interest of beneficiary—Physician and patient—Circumstances surrounding preparation of will.*

1. A contestant of a will is not entitled to an issue devisavit vel non merely because a confidential relation exists between the

decedent and his physician, who assisted in the preparation of the will and who is named as the residuary legatee receiving a substantial part of the estate, where the testator's testamentary capacity was clearly established and no attempt was made to show that the testator was mentally weak at the time the will was dictated and for some time thereafter, and it did not appear that the physician made any attempt to exercise control over the decedent, other than in a professional way.

2. The interest which the decedent's physician received under the will, though uncertain, was sufficient to shift the burden of proof to the proponents of the will to show testamentary capacity, and that no improper influence was exerted, where the testator disposing of an estate valued at about $6,500 gave his brother and sister each five dollars, and the rest of his property to his physician in trust for a young woman who had lived with the testator from early childhood until her marriage, with directions to pay her twenty-five dollars a month during her life, and any additional money necessary for her comfort in case of sickness, and the residue after her death to the physician to dispose of as he should see fit, except that it should not be given to testator's brother and sister.

3. Evidence of testator's failure to talk to some visitors and to make himself understood to their satisfaction, is insufficient to establish mental weakness or to base an opinion upon as to the strength of his intellect, inasmuch as he might have had personal reasons why he did not answer or make himself understood.

4. In determining whether a physician exerted undue influence upon the testator in the preparation of his will, the court will consider all the circumstances entering into the life of the deceased at or about the time of the acts complained of in so far as they relate to the duties and association with his physician. Evidence of his treatment and conduct, as well as that of the patient, is important in determining whether the testator was easily susceptible to flattery, persuasion or influence. The mere denial of the physician is not enough.

Argued May 13, 1919. Appeal, No. 285, Jan. T., 1919, by William H. Miller, from decree of O. C. Lancaster Co., Feb. T., 1917, No. 48, refusing an issue d. v. n. and dismissing an appeal from the decision of the Register of Wills admitting to probate the will of Joseph Miller, deceased. Before Brown, C. J., Moschzisker, Frazer, Walling, Simpson and Kephart, JJ. Affirmed.

Appeal from decision of register of wills admitting to probate the will of Joseph Miller, deceased. Before SMITH, P. J.

The orphans' court refused to award an issue to determine the testamentary capacity of the testator and whether the will was procured by undue influence, and dismissed the appeal. Wm. H. Miller appealed.

*Errors assigned* were refusing an issue d. v. n. and dismissing appeal from decision of the register of wills.

*Ralph B. Evans,* of *Prichard, Saul, Bayard & Evans,* with him *John E. Malone,* for appellant.—There must be a reversal in this case for two reasons:

1. Because the confidential relation between the decedent and his physician raised a presumption of undue influence: Adams's Est., 220 Pa. 531.

2. Because the evidence as to the decedent's lack of testamentary capacity was sufficient to support a finding of a jury against the will.

The duty of the orphans' court is not to pass upon the weight of the testimony, but simply to determine whether the evidence is sufficient to sustain a finding against the will: Phillips's Est., 224 Pa. 35.

*B. F. Davis,* with him *John M. Groff,* for appellees.— There can be no question as to the sufficiency of the execution of the will: Carson's App., 59 Pa. 493.

Undue influence is fraud exercised upon the testator at the time of the execution of the will: Herr's Est., 251 Pa. 223; Phillips's Est., 244 Pa. 35.

The fact that the physician was appointed executor is not evidence of undue influence, and does not shift the burden of proof: Linton's App., 104 Pa. 228.

OPINION BY MR. JUSTICE KEPHART, June 21, 1919:

The appellant urges that an issue d. v. n. must be awarded, because the confidential relation existing be-

tween the decedent and his physician, who is named in the will as the residuary legatee, receiving a substantial part of the estate, raises a presumption of undue influence, and ipso facto entitles the contestant to an issue. The rule as stated by our brother, MOSCHZISKER, in Phillips's Est., 244 Pa. 35, 43, is as follows: "Where a person has testamentary capacity, but is so weak physically or mentally as to be susceptible to undue influence, and a substantial part of his estate is left to one occupying a confidential relation to him, the burden is upon the latter to show that no improper influence controlled the making of the will......but in a case where the decedent's testamentary capacity is conceded and there is no evidence of weakened intellect, the burden is upon those asserting undue influence to prove it, even where the bulk of the estate is left to one occupying a confidential relation." The court will not be astute in determining the extent of interest the confidential advisor must receive in order to raise the presumption. Any appreciable benefit that would ordinarily actuate a mind inclined to exercise this control will be sufficient; each case must depend on its own circumstances, as no hard and fast rule can be laid down: Adams's Est., 220 Pa. 531, 533.

Joseph Miller died December 17, 1916. His nearest relatives were an adopted daughter and a brother and sister. At the time of his death, he was in his seventy-seventh year. On August 31, 1916, he was stricken with paralysis, which resulted in his death. Dr. Kyle, his physician, in response to a call, a short time before this illness, met Mr. Miller in the latter's yard, and was requested to write the will. He then made a note of the testator's instructions on some prescription blanks. Later the will was inartistically and inaccurately drawn by the doctor, signed by the testator making his mark, and attested by two subscribing witnesses. The precise time this was done does not definitely appear. In it he gave to his brother and sister each five dollars, and the rest of the property to his executor, Dr. Kyle, in trust for

Gertie Ruth, who had lived with him from early childhood until her marriage in 1907, a period of twenty-five years. An allowance of $25 a month was to be paid during her life, with any additional money necessary, in case of sickness, for her comfort. The residue, after Gertie Ruth's death, was bequeathed to Dr. Kyle "to dispose of it as he sees fit, only that none of my estate shall be given my brother and sister, other than what I have directed." The estate was valued at about $6,500. The interest which Dr. Kyle was to receive, though uncertain, was sufficient to raise the presumption and, under the rule, shift the burden to the proponents of the will to show testamentary capacity and that no improper influence was exerted. There is not a particle of proof to show, at the time the testator met the physician in the yard and directed how the will was to be written, he was not possessed of his full mental faculties; but appellant urges his condition later, after receiving the stroke, weakened his intellect. We have carefully examined the evidence and find nothing to support that conclusion. Mere old age would not be enough, and while his affliction was enfeebling, striking down, to a certain extent, his power of speech and movement, he was able, with assistance, to get around some and go out in a chair; and, while not able to hold a conversation, he could talk sufficiently to make himself understood, and looked after the ordinary running expenses of the house. The only evidence of mental breakdown was his failure to talk to some of the visitors, or to make himself understood to their satisfaction. Their efforts were too limited to be considered a test, and are clearly insufficient to base an opinion upon as to the strength of his intellect. He might have had personal reasons why he did not want to answer or make himself understood. The evidence, without apparent contradiction, shows that he was mentally alert. The testimony of the physician who was called in consultation, of those who were in constant attendance, and of the minister who waited on him, is conclusive on this branch of the

case.   The evidence here is not like that in Adams's Est., 220 Pa. 531, 533, where an issue was awarded.   The testamentary capacity having been clearly established and no attempt to show that at the time the will was dictated, and for some time thereafter, testator was mentally weak, the proponents of the will have discharged the first burden placed on them.

On the second branch of the case, relating to undue influence, the court will consider all the circumstances entering into the life of the deceased at or about the time of the acts complained of as they relate to the duties of and association with his physician.   From such life and association, it will endeavor to find, from the conduct of both, if there is any ground for belief that improper motives had actuated the advisor.   The patient is unconsciously subjected to a feeling of dependency on his physician; his reluctance to make any change, and his desire to cause the doctor to exert extraordinary effort in his behalf, may be seized upon, by one whose professional honor is at low ebb, to create a condition of undue influence to effect a testamentary disposition of property. Evidence of his treatment and conduct, as well as that of the patient, is important in determining whether the testator was easily susceptible to flattery, persuasion or influence.   The mere denial of the physician is not enough.   But the entire atmosphere of this case is devoid of any attempt on the part of the physician to exercise control, other than in a professional way, over the decedent.   There was not the slightest attempt to show the doctor did anything outside of the ordinary work of a physician promptly attended to; nor was there evidence that those in attendance attempted to influence the testator's mind.   It does appear that he was determined to give his property to those who had shown some attention and affection for him during the later period of his life.

The assignments of error are overruled and the decree of the court below is affirmed at the cost of the appellant.