370 A.2d 314

**In re ESTATE of Herbert C. DUNLAP, Deceased.**

**Appeal of Geraldine ZETTLEMOYER.**

Supreme Court of Pennsylvania.

Argued Nov. 16, 1976.

Decided Feb. 28, 1977.

Dale A. Reichley, Quakertown, for appellant.

George Q. Hardwick, Spring House, for appellee, Herbert C. Dunlap, Jr., executor.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

Herbert C. Dunlap died on January 8, 1974. By a will dated July 9, 1969, he left his estate to his three children, Geraldine Zettlemoyer, Kenneth Dunlap and Herbert C. Dunlap, Jr. in equal shares. A codicil dated December 4, 1973, however, reduced the share of appellant, Geraldine Zettlemoyer, to twenty per cent and increased the shares of each son to forty per cent. Appellant filed a Petition Sur Appeal from the Register of Wills' probate of the codicil. Appellant asserted that the codicil was invalid because it was procured through the undue influence of Herbert C. Dunlap, Jr. After appellant presented her evidence, the Orphans' Court granted appellee's motion for a nonsuit. In this appeal,[1] appellant contends that it was improper to grant the nonsuit. We conclude that the nonsuit was properly granted and affirm the decree of the trial court.

The power of the orphans' court to enter a nonsuit derives from section 779 of the Probate, Estates and Fiduciaries Code.[2] Section 779 provides, in pertinent part:

"(a) In general.—The orphans' court division may enter a nonsuit under the same circumstances, subject to review in the same manner and with the same effect as in an action at law.

(b) Will contest.—A nonsuit may be entered against a contestant in a will contest whenever the contestant has the burden of overcoming the presumption of validity arising from due proof of execution as required by law and the contestant has failed to satisfy that burden."

1. We hear this case pursuant to the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. II, § 202(3), 17 P. S. 211.202(3) (Supp.1976).

2. 20 Pa.C.S.A. § 779 (1975).

■■    In actions at law, a nonsuit may be granted at the close of plaintiff's case only when it is clear that plaintiff has presented insufficient evidence to maintain the action.   See *Exposito v. Dairymen's League Cooperative Assoc'n, Inc.*, 236 Pa.Super. 401, 344 A.2d 505 (1975).   In ruling on a nonsuit, the trial court views the evidence in the light most favorable to plaintiff and gives plaintiff the benefit of all favorable evidence and all reasonable inferences therefrom.   E. g., *Tolbert v. Gillette*, 438 Pa. 63, 260 A.2d 463 (1970); *Flagiello v. Crilly*, 409 Pa. 389, 187 A.2d 289 (1963).

■    Herbert C. Dunlap, Jr., the proponent of the codicil, established the formalities of execution without opposition.   This created a presumption of lack of undue influence.   See *In re Estate of Clark*, 461 Pa. 52, 334 A. 2d 628 (1975).   Appellant, then, had the burden of establishing by clear and convincing evidence that

"  .   .   .   1) when the will was executed the testator was of weakened intellect, and 2) that a person in a confidential relationship with the testator 3) receives a substantial benefit under the will."

*In re Estate of Fickert*, 461 Pa. 653, 657, 337 A.2d 592, 594 (1975) ; *In re Estate of Clark*, supra (concurring opinion of Roberts, J., joined by Pomeroy, Nix and Manderino, JJ.).[3]   The trial court ruled that appellant failed to make out a prima facie case of undue influence.

Appellant presented the following evidence to support her claim of undue influence.   From 1972 to April 1973, testator lived in a room in Dublin, Pennsylvania, while employed as a security guard.   In April 1973, he entered the hospital for sixteen days and underwent a prostate operation.   After leaving the hospital, he went to live

---

**3.**  If a contestant satisfies this burden, the proponent must produce clear and convincing evidence affirmatively demonstrating the absence of undue influence. *In re Estate of Clark*, 461 Pa. 52, 334 A.2d 628 (1975) (opinion of Jones, C. J., announcing the judgment).

with his son Herbert, Jr. for six to eight weeks. He did not return to work. While recuperating from surgery, testator was unable to operate an automobile. Herbert, Jr. took him to visit friends and to shop. He also took his father to the bank, always dropping him off at the curb and never entering the bank with him.

In June 1973, testator moved to his own apartment in Fort Washington, about four miles from Herbert, Jr.'s home. He also bought a new car, which he drove for about two months. He then attempted to sell the car back to the dealer, but was dissatisfied with the price offered. Instead, he gave the car to Herbert, Jr. in return for his son's agreement to chauffeur him when he needed a ride. Herbert, Jr. and his wife visited testator approximately three or four times a week. In general, testator conducted his own affairs. However, he did receive some help in paying his bills: he would give cash to Herbert Jr.'s wife who then bought money orders and mailed the payments.

From April to November 1973, appellant did not communicate with her father. Herbert, Jr. made no attempt to inform his sister where their father was residing; nor did appellant contact Herbert, Jr., to ascertain this information. On November 24, 1973, Herbert, Jr. telephoned appellant, informed her of their father's address and asked her to help care for him. Testator also spoke to appellant by phone on that day. Nevertheless, appellant had no further contact with testator before his death.

A few days after these phone conversations, Herbert, Jr.'s wife made an appointment for testator to see his attorney. She made the call to arrange a time which would be convenient for Herbert, Jr. to drive his father to the attorney's office. Herbert, Jr. took his father there on November 29, 1973. He was not present while testator and his attorney conferred. Testator directed

his attorney to prepare a codicil to his will decreasing the share going to his daughter. The attorney testified:

> "I attempted to engage him in conversation about that, because I don't particularly like to do that kind of thing . . . and he didn't give me much of a reason except to say something to the effect that he thought she didn't care as much about him as his sons cared about him . . . ."

On December 4, 1973, testator returned to his attorney's office, read the codicil and executed it. Herbert, Jr. was not present when his father read and executed the codicil.

In January 1974, several days before he died, testator made a down payment on a travel-trailer for the purpose of taking Herbert, Jr.'s two children camping in the coming summer. After testator's death, the sale was cancelled and the down payment returned to the estate.

The testimony also indicated that prior to his retirement, testator had watched his money closely and was considered frugal, perhaps even "tight." Herbert, Jr. testified that his father

> " . . . changed when he came out of the hospital. He wanted to go places and everything. Before he used to stay around, and never wanted to go, but usually, after he came out of the hospital, his attitude of life changed a little bit. He [did] not as much, shall we say, squeeze the penny as much as before."

We agree with the trial court's conclusion that appellant did not satisfy her burden of proving undue influence by clear and convincing evidence.

Appellant produced no evidence that testator suffered from a weakened intellect. Herbert, Jr.'s uncontradicted testimony was that his father was 100 per cent "mentally". A medical report of testator's condition seven months before execution of the codicil described him as a "well-developed, well-nourished, obese white male in no

acute distress." Appellant relies primarily on the change in testator's spending habits after he was discharged from the hospital in April 1973. We cannot agree that this alone establishes that testator had a weakened intellect.

Moreover, the evidence does not establish the existence of a confidential relationship. A confidential relationship exists when

" . . . the circumstances make it certain the parties do not deal on equal terms, but, on the one side there is an overmastering influence, or, on the other, weakness, dependence, or trust, justifiably reposed [for] in both [situations] an unfair advantage is possible."

*In re Estate of Button,* 459 Pa. 234, 239 n. 4, 328 A.2d 480, 483 n. 4 (1974), quoting *Leedom v. Palmer,* 274 Pa. 22, 25, 117 A. 410, 411 (1922). Nothing in the record indicates that Herbert, Jr. exercised an "overmastering influence" over his father, or that the two could not deal on reasonably equal terms. Significantly, Herbert, Jr. was not present when his father conducted his banking business or when he discussed or executed the codicil to his will. In short, appellant's evidence describes an individual independently handling his own affairs.[4]

Accordingly, we conclude that the trial court properly granted a nonsuit.

Decree affirmed.

Each party pay own costs.

4. In light of our conclusion, we need not address the issue whether Herbert, Jr. received a substantial benefit under the codicil.