615 A.2d 38

**In re ESTATE OF Miriam R. LeVIN.**

**Appeal of Joseph TERCHA, the Foundation for Animals and Culture, and the Unity School for Christianity.**

Superior Court of Pennsylvania.

Argued May 27, 1992.

Filed Sept. 3, 1992.

Reargument Denied Nov. 13, 1992.

90

Bernard M. Berman, Stephen M. Asbel, Media, on brief; Clifford B. Cohn, Philadelphia, on oral argument, for appellants.

Kevin Holleran, West Chester, for Meridian Trust Co., participating party.

Before CIRILLO, POPOVICH and HOFFMAN, JJ.

POPOVICH, Judge:

This case involves an appeal from the September 5, 1991, order of the Court of Common Pleas of Chester County, Orphans' Court Division, entering a nonsuit in favor of the Meridian Bank & Trust Company ("Meridian") and against Joseph Tercha, The Foundation For Animals and Culture, and The Unity School For Christianity, appellants. We reverse.

The standard of review has been articulated in *Estate of Dunlap*, 471 Pa. 303, 370 A.2d 314, 315 (1977) (Footnote omitted):

> The power of the orphans' court to enter a nonsuit derives from section 779 of the Probate, Estates and Fiduciaries Code. Section 779 provides, in pertinent part:
>
> "(a) In general.—The orphans' court division may enter a nonsuit under the same circumstances, subject to review in the same manner and with the same effect as in an action at law.
>
> (b) Will contest.—A nonsuit may be entered against a contestant in a will contest whenever the contestant has the burden of overcoming the presumption of validity

arising from due proof of execution as required by law and the contestant has failed to satisfy that burden."

In actions at law, a nonsuit may be granted at the close of plaintiff's case only when it is clear that plaintiff has presented insufficient evidence to maintain the action. See *Esposito v. Dairymen's League Cooperative Assoc'n, Inc.*, 236 Pa.Super. 401, 344 A.2d 505 (1975). In ruling on a nonsuit, the trial court views the evidence in the light most favorable to plaintiff and gives plaintiff the benefit of all favorable evidence and all reasonable inferences therefrom. E.g., *Tolbert v. Gillette*, 438 Pa. 63, 260 A.2d 463 (1970); *Flagiello v. Crilly*, 409 Pa. 389, 187 A.2d 289 (1963).

The facts, viewed in a light most favorable to the appellants/contestants, reveal that in the fall of 1984, John Tercha's wife, Naomi, met Ms. LeVin and the two became "very dear friends". The two regularly ate lunch together, went shopping and, for one year before Ms. LeVin's death, Ms. Tercha phoned every morning to inquire how she had slept and if she needed anything. Eventually, the Terchas considered Ms. LeVin "a member of the family."

In this same vein, Ms. LeVin discussed the disposition of her property with Mr. Tercha and asked him to be the executor of her will. When he consented, Ms. LeVin was "very happy". Asked "about getting a lawyer", Mr. Tercha offered the name of a friend. Ms. LeVin met with this attorney and the by-product was a will dated July 29, 1987, in which Mr. Tercha was named co-executor and trustee. Also, during this same period, Ms. LeVin executed a power-of-attorney in favor of Mr. Tercha.[1]

1.  Under the 1987 will, five charitable organizations were given bequests of $5,000 each, a home in Chester County was devised to the Anti–Vivisection Society and the Foundation For Culture and Animals (the former of which received $1,000 and real estate in 1987, while the latter received monetary contributions from Ms. LeVin, a life-time member of the organization), and the remainder of the estate was to be distributed after five years to seven ethnic and organizational groups favored by Ms. LeVin.

    With the execution of the April 25, 1988 will, the special devise of the home was excised, Tercha was replaced as executor/trustee and as attorney-in-fact by Meridian. Ms. Tulumello, Meridian's bank manag-

While in the hospital in March of 1988, Ms. LeVin's health began to deteriorate. For example, she discontinued her "normal" routine, e.g., reading her mail and handling her financial matters, because of her weakened medical condition. Consequently, after the Terchas decided to travel to Florida in April of 1988, they suggested that a Ms. Tulumello (a long-time friend of Ms. LeVin and a manager for Meridian Bank & Trust Company) handle the day-to-day payment of Ms. LeVin's bills. This was done. Also, arrangements were made for Ms. LeVin to have around-the-clock nursing care.

Even with her departure, Ms. Tercha would telephone every morning and Ms. LeVin was "very happy" to speak with her, even though she could only talk for 3–5 minutes. During her third week in Florida, however, Ms. Tercha could not get access to Ms. LeVin. Every time she phoned, Tercha was told Ms. LeVin was "resting" or "too weak to come to the phone". On one occasion, Ms. Tercha recalled hearing Ms. LeVin's voice in the background saying: "give me the phone" and crying while telling Ms. Tercha: "They've got me so confused."

When the Terchas returned home in the latter part of April, they learned that Ms. LeVin had died on the 29th of the month and that Ms. LeVin had executed a new will dated April 25, 1988. A will contest was instituted thereafter challenging the validity of the April 25, 1988, will.[2]

er, later renounced her role as co-trustee under the 1988 will, and three of the six charities named in the residuary estate of the 1987 will were removed. The remaining portion of the 1988 will disposed of the estate in a fashion similar to the 1987 will.

2. At trial, during the time that the April 25, 1988, will was prepared, the contestants' medical expert opined that Ms. LeVin was suffering from chronic lymphocytic heart failure, leukemia and a low hemoglobin count. To counteract her maladies, Ms. LeVin was prescribed various drugs, all of which, according to the expert, lowered her ability to function physically and mentally. More specifically, the expert, based on a reasonable degree of medical certainty, was of the opinion that Ms. LeVin was suffering from a weakened intellect on the date the 1988 will was executed.

The expert's opinion was premised upon a review of the medical records and depositions of those individuals who had interacted with Ms. LeVin during the time the will was prepared. Further, the expert's

▮ Meridian, the proponent of the last will and testament of the decedent, established the formalities of execution of the April 25, 1988, instrument over the objection of the attorneys for Tercha and the other contestants—American Antivivisection Society and the Foundation of Culture & Animals, the former being named trustee and the latter two listed as legatees in an earlier will dated July 29, 1987. No such provisions were carried over into the April 25, 1988, will. This created a presumption of lack of undue influence. Id. Thereafter, the appellants had the burden of establishing by clear and convincing evidence that (1) the will was executed when the testatrix was of a weakened intellect, and (2) that a person (or entity) in a confidential relationship with the testatrix (3) received a substantial benefit under the will. See *In re Estate of Clark*, 461 Pa. 52, 334 A.2d 628, 632 (1975).[3]

▮ The Orphans' Court ruled that the appellants, although establishing the presence of a weakened intellect and confidential relationship, failed to make out a prima facie case of undue influence by not proving that Meridian received a substantial benefit under the will. See *In re Estate of Simpson*, 407 Pa.Super. 1, 595 A.2d 94, 98 (1991) (Before burden of proof shifts from contestant back to proponent of will, the contestant

conclusion was consistent with the accounts of the Terchas, Gilbert M. Pratt (Ms. LeVin's gardener), Dorothy Reber (nurse's aid) and Camilli Lownds (a neighbor), all of whom described Ms. LeVin as a strong-willed, independently-minded person who had a mistrust of lawyers and banks because of an unfavorable financial experience. She did not want the same fate to befall her wealth.

At trial, it was disclosed that Ms. Tulumello, a bank manager for Meridian and close friend of the decedent from 1984 until her death, convinced the decedent to open an account with Meridian and execute a power-of-attorney in its favor. Additionally, during the time the April 29, 1988, will was prepared, and through Ms. Tulumello, Meridian Asset Management came to Ms. LeVin's home. The aftermath of which was the execution of the 1988 will prepared by an attorney who has since become employed by Meridian to handle the decedent's trust.

3. To the appellants' argument that the tripartite test listed in *Clark*, supra, is inconsistent with and superseded by a six-part test in *Boyd v. Boyd*, 66 Pa. 283 (1870), we find that these tests have been reconciled, "and the three-part test held to be all that must be satisfied to shift the burden of proof, in *Estate of Clark* [, supra]." See *Estate of Younger*, 314 Pa.Super. 480, 461 A.2d 259, 262 n. 3 (1983), overruled on other grounds, *In re Estate of Pedrick*, 505 Pa. 530, 482 A.2d 215 (1984).

must establish all three parts of the test outlined in *Clark,* supra).

After careful review, we hold that the evidence in the record, when viewed against the backdrop of the applicable law, does not support the findings of the Orphans' Court. See *In re Estate of Button,* 459 Pa. 234, 328 A.2d 480, 483 (1974).

Neither party disputes the Orphans' Court's findings that the testatrix possessed a weakened intellect and had a confidential relationship with Meridian's agents/employees at the time the April 25, 1988, will was executed. Given that the record is supportive of such findings, and the parties are not raising either issue on appeal, we dispense with the need to discuss them. Thus, we need not recount the facts upon which they are premised, and we merely note our perusal of the testimony proffered on these points and recounted supra, and find each to be consistent with the Orphans' Court's determination in regard thereto.

However, the same result does not obtain with regard to the absence of the "substantial benefit" criterion, reaffirmed in *Clark,* supra, whose existence is a condition precedent to proving, prima facie, undue influence sufficient to shift the burden of non-persuasion back to the proponent to produce clear and convincing evidence demonstrating affirmatively the absence of undue influence. See *Dunlap,* supra; *Clark,* supra.

The dearth of cases in this Commonwealth has necessitated a search of the decisions on point by our sister-jurisdictions on the issue of whether Meridian can be said to have received a substantial benefit under the testatrix's will so as to convert it into a beneficiary and tainting its continuing retention of the position of trustee of decedent's assets, which have been valued at approximately 1.5 million dollars.

The first aspect of the appeal is to decide what constitutes a "substantial" benefit to trigger *Clark's* tripartite test of undue influence. In this regard, our Supreme Court has spoken on the subject in *Adams' Estate,* 220 Pa. 531, 69 A. 989 (1908).

*Adams' Estate* deals with a will contest in which the admission of a will to probate was objected to on the ground of

undue influence. The issue on appeal was whether the executor, who was also a trustee under the will, had a "substantial" interest so much as to shift the burden of proof upon the proponent to prove that the testatrix was cognizant of the disposition made of her property by will and the trust relation created in favor of the executor/trustee and the benefits inuring to him.

The Court in *Adams' Estate* found that a presumption of undue influence arose to shift the burden of non-persuasion to the executor/trustee because he had obtained a "substantial" interest under the will executed by a testatrix who was mentally and physically impaired and he was a confidential adviser of the decedent. In the course of reversing the decree in favor of the proponent the Court wrote:

> ... it is argued with much force that, in order to make the rule operative, the confidential adviser must have benefited to a considerable extent or in a substantial manner. In other words, in order to shift the burden of proof, the benefit derived from the will must be a large, or considerable, or substantial interest. It is true in some of our cases such expressions have been used, and in Linton's Appeal, 104 Pa. 228, it was held that the appointment as executor with the right to receive the usual commissions did not constitute such an interest. In no case, however, has the court undertaken to exactly define the character of benefit or the extent of interest the confidential adviser must receive in order to shift the burden of proof, and, indeed, it may be said no hard and fast rule can be laid down. Something must depend upon the circumstances of each particular case. What the law requires is that a person acting as confidential adviser to a testator, bodily infirm and mentally weak, must act in the utmost good faith, and if he is benefited in a legal sense by the will procured by him, he must assume the burden of showing deliberation, volition, and understanding on the part of the maker of the will. The benefit derived by Dr. Croskey, the confidential adviser in the present case, under the will was first, an executorship; second, a trusteeship by means of which he has the

control or partial control, of the entire estate, amounting to perhaps $75,000, for a period of years; and, third, a possible residuary interest in the whole estate. Certainly all of those things gave him such a substantial interest as to bring him within the operation of the rule which provides that where a testator, although possessed of testamentary capacity is aged, infirm bodily, with mental faculties impaired, as against a confidential adviser who is a beneficiary under the will, there is a presumption of fact that undue influence was brought to bear on the mind of the testator, and the burden is on the beneficiary to rebut the presumption.

220 Pa. at 534, 69 A. at 990 (Citations omitted). From *Adams' Estate* we learn that what is a "substantial benefit" to cause the burden to shift is a case-by-case process. More relevant is the reference to a finding of "substantial" benefit where a proponent holds the position of executor and trustee, has control over the entire estate and has a possible residuary interest in the whole estate.

Further, we find the remarks of the Supreme Court of Alabama in *Zeigler v. Coffin*, 219 Ala. 586, 123 So. 22 (1929) instructive in analyzing a will contest concerning a confidential relationship between a scrivener/executor/trustee and the testator.

In *Zeigler*, the proponent/lawyer drafted two wills for the testator, the last of which created a trust with the proponent as trustee of 280 acres of land on which rested a dairy, sawmill, ore plant, a farm, and personal property. The instrument gave the proponent:

... full and supreme power and authority over such property during the life of the widow, to sell and convey, invest and reinvest, pay expenses, account to no court, with the right, but no duty to pay the profits realized to the widow during her life, then to terminate the trust. He could exercise his own judgment as to when he paid her anything. He was relieved of bond.

219 Ala. at 588, 123 So. at 23. These factors were considered relevant in placing the burden on the proponent to disprove undue influence. The criteria looked to in shifting the burden

to the proponent in a trust situation were articulated as follows:

> The result is influenced by the nature of the trust, the amount involved, the amount of fees which the trustee will receive, whether he is the sole trustee, its probable duration, his discretionary powers, and all the details of the trust, and is a question of fact. The creation of a trust, with the scrivener as trustee, alone, and not influenced by the facts above mentioned, would not constitute the trustee such a beneficiary. There must be some *substantial* personal benefit to the trustee.
>
> The activity upon the part of the beneficiary in order to cast the burden of proof upon him must be more than activity and interest referable solely to a compliance with or obedience to the free agency and voluntary instructions or directions of the testator.

*Id.* (Emphasis added; citations omitted). In light of the facts recounted, the Court in *Zeigler* found that the proponent, despite the fact that he was only receiving compensation for his services as a trustee, was the recipient of "collateral benefits" which would naturally flow from his "free and complete powers and discretion" so as to label him a beneficiary under the will, and, thus, bring him within the rule fixing the burden of proof on him to disprove undue influence. Accord *Allen v. Estate of Dutton*, 394 So.2d 132 (Fla.App.1981) (Scrivener/executor/trustee's absolute discretion to distribute $427,-377.00 to charitable beneficiaries endowed proponent with sufficient "collateral benefit" to render him a "substantial beneficiary" under decedent's will to raise a presumption of undue influence); *In re Estate of Nelson*, 232 So.2d 222 (Fla.App.1970); see also *Zinnser v. Gregory*, 77 So.2d 611 (Fla.1955).

Instantly, consistent with the standard set forth in *Zeigler,* supra, we find that Meridian was named the executor and sole trustee under Levin's will.[4] Although Meridian is entitled to compensation for its services as a trustee/executor in accor-

---

4. Ms. Edith Tulumello relinquished her position as a named co-trustee in the decedent's will. Also, we would note that Ms. Tulumello was an employee of Meridian and was present, along with another employee,

dance with its "Standard Schedule of Charges",[5] we find, as did the Courts in *Zeigler* and *Dutton,* that Meridian is the object of "substantial collateral benefits" under the will so as to convert it into a beneficiary requiring it to deflect the prima facie proof of undue influence. To-wit, the will, executed in the presence of and following a discussion with Meridian's personnel, vests Meridian with extensive powers over the distribution and continuation of the trust in perpetuity which smacks of undue influence.

when the decedent executed her will of April 25, 1988, the one under attack by the appellants.

5. On this point, the appellants wrote in their brief at page 11 (emphasis in original):

The actual benefits to the Proponents under the contested will are not in dispute as there has been a stipulation. As Executor, Meridian will receive approximately $39,000.00 in base fees plus $4,500.00 annually. As Trustee, Meridian will receive at least $24,500.00 annually *in perpetuity.*

Meridian Asset Management is to serve as Executor and Trustee under the will and in these roles, would receive both immediate and long term financial gain. By stipulation, Meridian's fee schedules were introduced into evidence. For settling the Estate, Meridian receives 5 percent of the first $100,000.00, 4 percent of the next $200,000.00, 3 percent of the next $200,000.00 and 2 percent of the next $1.5 million. If the estate is assumed to be worth $1.5 million, then as Executor, Meridian will receive a fee of approximately $39,000.00. In addition, Meridian receives 5 percent of the gross income during its handling of the estate. At the modest yield of 6 percent per year, Meridian would receive an additional $4,500.00 per year as Executor.

In addition, Meridian is to be Trustee of a trust known as the Joseph Ruhe Foundation. The trust corpus comprises nearly all of the estate. Since the estate is quite probably worth over 1.5 million, it will be assumed arguendo that the trust corpus is 1.5 million. Meridian's trust fees are as follows: $5.00 per $1000 on the first $500,000.00 payable quarterly, $3.00 per $1000.00 on the next $500,000.00 payable quarterly, and $2.00 per $1000.00 on the next $1 million payable quarterly. Assuming the trust corpus is $1.5 million, Meridian would receive $5,000.00 per quarter or $20,000.00 per year in trust fees. In addition, Meridian is to receive 5 percent of the gross income. At the modest yield of 6 percent per year, Meridian would receive an additional $4,500.00. Thus, Meridian, as Trustee, will have legal ownership of virtually all of Miss LeVin's $1.5 million estate forever and receive at least $24,500.00 per year in fees and charges on income.

The cumulative effect of these fees, when viewed in conjunction with the "absolute discretion" power vested in Meridian under the trust, casts doubt over the absence of undue influence over Ms. LeVin.

For example, testatrix gave specific bequests to Hagley Museum (choice of antiques in home), Brandywine River Museum (choice of paintings in home), Joseph and Naomi Tercha (one piece of jewelry to be determined by Edith Tulumello), James Lane (1963 Cadillac) and Katie Tribe (new Cadillac). The legatees named and the recipients of $5,000.00 each consisted of five identified charities. The remaining portion of the decedent's 1.5 million dollar estate was to be disposed of by the trustee, Meridian, as "it shall determine" and to whom "it shall select", giving preference, however, to four named organizations looked with favor upon by the testatrix. See Will, ITEM X, Paragraph A.

The trustee was authorized, without court order, to revise the terms of the trust, if "such action w[ould] best serve [testatrix's] purpose". Id. at Paragraph C. Trustee had the authority to invest, sell or dispose of trust assets to realize income or gain. Id. at Paragraph D. Interestingly, Meridian had the power to invest property without restriction. This included purchasing common stock (up to 100%) in Meridian-titled investment entities, id., ITEM XI, Paragraph A, and to do all other acts in its judgment necessary or desirable for the proper management, investment and distribution of testatrix's property. Id. at Paragraph K.

Lastly, the trustee had the "absolute discretion" to determine when and if the trust became "impracticable to administer". If such did occur, the trustee, without a formal court accounting, could distribute the principal to organizations entitled to the income, provided only that the group used the emoluments for purposes set forth in the will, i.e., exclusively for the humane treatment of animals. No earnings could inure to the benefit of any private person.

Since the will proscribed the distribution to private individuals and bequeathed a fix amount to five charities, the balance of the trust principal and income would be left to the discretion of the trustee to distribute under Sections 170(c) and 2055 of the Internal Revenue Code [6]—meeting federal criteria for

6. Section 170 deals with charitable contributions and gifts, with subsection (c) paragraph (4) defining a charitable contribution or gift as one

charitable contributions—or shown a preference by the decedent (of which four were listed), but it being reserved to the trustee to "determine and select" which would benefit.

Meridian clearly had a fiduciary or confidential relationship with LeVin, it having had bank personnel present on the premises at the time the will was executed, one of whom was a confidante of the decedent—Ms. Tulumello. Other bank officials were present at the invitation of Tulumello, acting for LeVin.

■■■■ We would note that merely being named as executor or trustee in another's will would not be sufficient, in and of itself, to make Meridian a "substantial beneficiary". See *Dutton*, supra; *Zinnser*, supra. Nor would the receipt of commissions for services rendered the estate as an executor or trustee tip the scales in favor of holding one a "substantial beneficiary" satisfying the last prong of the three-part test of undue influence under *Clark*, supra. See *Wetzel v. Edwards*, 340 Pa. 121, 134, 16 A.2d 441 (1940); *Linton's Appeal*, 104 Pa. 228, 237–38 (1883); *Griffith Estate*, 63 Montgomery Cty.L.R. 275, 288–89 (1947).

However, given Meridian's "absolute discretion" to terminate the trust and distribute the assets to whomever it selected, provided they were humane to animals and conformed to various provisions of the Internal Revenue Code (the same conditions control distribution of income during the life of the trust), we view such distributive powers as embracing the "bulk" of LeVin's estate. And, when coupled with the fees paid, the powers reserved to Meridian endowed it with "collateral benefits" bringing it within the sphere of a "substantial beneficiary" under the decedent's April 1988 will. See *Adams' Estate*, supra; *Dutton*, supra; *Nelson*, supra; *Zeigler*, supra.

made for the prevention of cruelty to animals as an itemized deduction in calculating income taxes. 26 U.S.C.A. § 170(c)(4) (Supp.1992).

Section 2055 applies to valuing an estate for tax purposes by allowing various deductions (gifts), one of which is a bequest or transfer to a trustee if used for the prevention of cruelty to animals. Id. at § 2055(a)(3) (1989). Thus, under the terms of the trust, Meridian would have to distribute trust income to organizations involved with animal care.

To the same effect, the naming of Meridian as executor and trustee of a 1.5 million dollar estate without bond only adds to our finding of prima facie evidence of undue influence.

Accordingly, given the fact that the contestants established the presence of undue influence on the decedent at the time she executed the April 1988 will, it is incumbent upon the appellee-Meridian to demonstrate the absence of undue influence by clear and convincing evidence. *Button*, supra; *Williams v. McCarroll*, 374 Pa. 281, 97 A.2d 14 (1953); *More v. People's Bank and Trust Co.*, 297 Pa. 252, 146 A. 896 (1929); *In re Phillips' Estate*, 244 Pa. 35, 90 A. 457 (1914); see also *In re Miller's Estate*, 265 Pa. 315, 108 A. 616 (1919).

Because the Orphans' Court's ruling is at odds with our reading of the facts and applicable law on the issue at hand, we reverse and remand for proceedings where Meridian may prove by clear and convincing evidence the absence of undue influence. Whatever result obtains will dictate what course the parties will pursue, a subject which need not be delved into at this juncture of the appellate process.

Order reversed; jurisdiction relinquished.