In re ESTATE OF Erma K. STOUT.

**Appeal of William Stout.**

Superior Court of Pennsylvania.

Argued Jan. 12, 2000.

Filed Feb. 11, 2000.

Theron G. Noble, District Attorney, Clearfield, for appellant.

Jarrell D. Wright, Pittsburgh, for William & Sharon Ransom, participating parties.

Gary J. Gushard, Pittsburgh, for Leslie T. Ransom, participating party.

Before KELLY, JOHNSON, and TAMILIA, JJ.

JOHNSON, J.:

¶ 1 William Stout appeals the order denying and dismissing a will contest pursuant to the Probate, Estates and Fiduciaries Code, 20 Pa.C.S. § 908(a). Stout contested the probate of his aunt's Last Will and Testament, alleging that his aunt's brother-in-law (Leslie Ransom) exerted undue influence resulting in Stout's disinheritance. Stout failed, however, to establish a prima facie case of undue influence sufficient to prevent probate of the contested will. For the following reasons, we affirm.

¶ 2 Erma K. Stout, the decedent whose will is the subject of this litigation, died without issue at age 81 on April 11, 1996. William Stout, the will contestant, is her nephew through marriage. Mrs. Stout's husband, who predeceased Mrs. Stout in 1992, and William Stout's father were brothers. The proponent of the will was Leslie Ransom, Mrs. Stout's brother-in-law. He was married to Mrs. Stout's sister, Eve. William Ransom is the son of Leslie and Eve Ransom, and is therefore Mrs. Stout's nephew by blood. Finally, Sharon Ransom is William Ransom's daughter, and is therefore Mrs. Stout's great-niece by blood.

¶ 3 In 1990, Mrs. Stout and her husband executed joint wills, naming each other as primary beneficiaries and naming William Stout, William Ransom, Shriner's Hospital (Shriner's), and Pittsburgh Guild for the Blind (Guild) as contingent beneficiaries. In 1993, after her husband's death, Mrs. Stout executed a new will ("1993 will") apportioning her estate as follows: 50% to William Stout, 20% to William Ransom, and 15% each to Shriner's and to Guild.

She also executed a power of attorney, naming Attorney Donald E. Rogers as her attorney-in-fact.

¶ 4 By 1995, Mrs. Stout began to suffer from various health problems. Her mental status at this time is disputed, but it is uncontested that, after suffering a fall, she was hospitalized for a week in October 1995. During the hospitalization, Mrs. Stout's physician noted impairment in Mrs. Stout's short-term memory and cognitive abilities, and he concluded that she suffered from moderate to severe Alzheimer's dementia. However, by the time she was discharged, her physician believed that she was alert, fully oriented, and exercised appropriate insight. The physician admitted that persons with Alzheimer's dementia can have lucid periods and that he could not, to a reasonable degree of medical certainty, render an opinion about Mrs. Stout's mental status on January 24, 1996 – the day she executed her Last Will and Testament. Although the evidence may have warranted a finding that Mrs. Stout had a weakened mental intellect at this time, the trial court determined that her condition was not such that she lacked testamentary capacity.

¶ 5 In January 1996, Leslie Ransom and Mrs. Stout went to Attorney Maryann Bozich–DiLuigi's office to discuss the preparation of a new will and a health care declaration. Mrs. Stout executed both documents on January 24, 1996. Attorney Bozich–DiLuigi, a former geriatric social worker, testified that, at the time the will was executed, Mrs. Stout demonstrated no signs of confusion, lethargy, disorientation, or memory impairment. Instead, Attorney Bozich–DiLuigi observed Mrs. Stout as animated, engaging, competent, and able to appropriately participate in conversation. This Last Will and Testament ("1996 will") named Leslie Ransom as executor and distributed the estate as follows: $5000.00 each to Shriner's and to Guild, 50% of the residuary estate to William Ransom, and 50% of the residuary estate to Sharon Ransom. Mrs. Stout died on April 11, 1996. The Register of Wills probated the 1996 will and issued letters testamentary to Leslie Ransom as executor of Mrs. Stout's estate.

¶ 6 On April 14, 1997, William Stout initiated a will contest to the probate of the 1996 will alleging that, *inter alia*, Mrs. Stout lacked testamentary capacity at the time she executed the 1996 will, and Leslie Ransom exerted undue influence on Mrs. Stout to disinherit William Stout. After a hearing, the Honorable Thomas D. Gladden denied and dismissed Stout's appeal from probates on October 8, 1998. In making this ruling, Judge Gladden adopted the Ransoms' Findings of Fact and Conclusions of Law in part. Judge Gladden specifically concluded that the decedent possessed testamentary capacity at the time she executed the 1996 will and that Leslie Ransom had not breached his fiduciary duty. Stout appealed to our Court on November 5, 1998.

¶ 7 Stout raises the following issue on appeal:

WHETHER THE WILL CONTESTANT ESTABLISHED A PRIMA FACIE CASE OF UNDUE INFLUENCE SUFFICIENT TO DENY THE RESPONDENTS' MOTION TO DISMISS?

*Brief of Appellant* at 4.

Our standard of review in will contests is well settled. We are limited to: determining whether the findings of fact approved by the court ... rest on legally competent and sufficient evidence, and whether an error of law has been made or an abuse of discretion committed. It is not our task to try the case anew. The rule is particularly applicable "to findings of fact which are predicated upon the credibility of witnesses, whom the judge has had the opportunity to hear and observe, and upon the weight given to their testimony."

*In re Estate of Glover*, 447 Pa.Super. 509, 669 A.2d 1011, 1013 (1996) (quoting *In re Estate of Bankovich*, 344 Pa.Super. 520, 496 A.2d 1227, 1229 (1985)).

¶ 8 Once a will has been probated, "a contestant who claims that there has been undue influence has the burden of proof." *Estate of Lakatosh*, 441 Pa.Super. 133, 656 A.2d 1378, 1383 (1995). A prima facie case of undue influence is established where "(1) a person in a confidential relationship (2) receives the bulk of the testator's property [i.e. substantial benefit] (3) from a testator of weakened intellect." *In re Estate of Clark*, 461 Pa. 52, 59–60, 334 A.2d 628, 632 (1975). If the will contestant is able to establish these three requirements by clear and convincing evidence, then the burden of proof shifts to the proponent of the will to establish lack of undue influence. *See In re Estate of LeVin*, 419 Pa.Super. 89, 615 A.2d 38, 40 (1992).

¶ 9 In his Findings of Fact and Conclusions of Law, Judge Gladden concluded that Stout did not establish that Leslie Ransom received a substantial benefit under the 1996 will. We must determine if the record and the law support Judge Gladden's conclusion. There is no hard and fast rule to "exactly define the character of benefit or the extent of interest [that] the confidential adviser must receive." *In re Estate of LeVin*, 615 A.2d at 41 (quoting *In re Adams' Estate*, 220 Pa. 531, 534, 69 A. 989, 990 (1908)). We are guided by the following principles:

> What the law requires is that a person acting as confidential adviser to a testator, bodily infirm and mentally weak, must act in the utmost good faith, and if he is benefited in a legal sense by the will procured by him, he must assume the burden of showing deliberation, volition, and understanding on the part of the maker of the will.

> \* \* \* \*

> [W]here a testator, although possessed of testamentary capacity is aged, infirm bodily, with mental faculties impaired, as against a confidential adviser who is a **beneficiary** under the will, there is a presumption of fact that undue influence was brought to bear on the mind of the testator, and the burden is on the beneficiary to rebut the presumption.

*In re Estate of LeVin*, 615 A.2d at 41 (quoting *In re Adams' Estate*, 220 Pa. at 534, 69 A. at 990) (emphasis supplied). Leslie Ransom is the executor of the 1996 will, but is not a beneficiary, so there is no presumption of undue influence in this regard. However, Stout argues that Leslie Ransom's son (William Ransom) and granddaughter (Sharon Ransom) received a substantial benefit under the will and that this substantial benefit should be imputed to Leslie Ransom. In other words, Stout argues that Leslie Ransom received substantial collateral benefits under the will by virtue of the bequests made to his immediate family.

¶ 10 Cases that have found a substantial benefit accruing to a testator's confidant via collateral benefits include factual circumstances where the confidant had unfettered control, extensive powers, absolute discretion, or extensive decision-making powers over the testator's estate. *See In re Estate of LeVin*, 615 A.2d at 42–43 (concluding that substantial benefit accrued to executor/trustee who had authority to dispose of the remainder of the testator's $1.5 million estate as the executor/trustee saw fit and to whomever the executor/trustee chose); *Adams' Estate*, 220 Pa. at 534, 69 A. at 990 (cited in *In re Estate of LeVin*, 615 A.2d at 41–42) (concluding that substantial benefit accrued to executor/trustee who was given control or partial control over the testator's entire estate for a period of years with a possible residuary interest in the whole estate); *Zeigler v. Coffin*, 219 Ala. 586, 123 So. 22 (1929) (cited in *In re Estate of LeVin*, 615 A.2d at 42) (concluding that substantial benefit accrued to an executor/trustee, who was also the testator's lawyer and scrivener of the will, and who was given "full and supreme power" over the estate during the life of the testator). Furthermore, there must be some kind of substantial *personal* benefit accruing to the confidant. *See Zeigler*, 123 So. at 22.

¶ 11 The common element of these cases is that the executor/trustee had control, discretion, or authority to dispose of or act on behalf of the estate, rather than merely complying with the testator's directions. *See In re Estate of LeVin*, 615 A.2d at 42. Merely being named an executor is not enough to establish substantial benefit. *See id.* at 44. Likewise, receipt of commissions received for the executor's service to the estate is not enough to establish substantial benefit. *See id.*

¶ 12 Moreover, Mrs. Stout's 1996 will did not grant any powers over the estate to Leslie Ransom, except those powers routinely associated with an executorship. Furthermore, Mrs. Stout's directions in the will were specific, allowing no room for Leslie Ransom to exercise his discretion. For example, Mrs. Stout directed Leslie Ransom to pay the taxes upon her death from the residuary estate. She bequeathed specific property, i.e. $5000.00 to Shriner's Hospital and $5000.00 to Pittsburgh Guild for the Blind. Disposition of the residuary estate is specifically set forth, i.e. 50% to William Ransom and 50% to Sharon Ransom. Mrs. Stout directed that Leslie Ransom sell all of her personal effects and her personal residence upon her death, at "such terms and at such prices as [he] shall deem advisable." This latter statement indicates some discretionary power, but does not rise to the level of absolute or unfettered control or discretion as was present in *In re Estate of LeVin* or *In re Adams' Estate*. Although he is granted other powers, such as borrowing money and holding proceeds for investment, these powers are vitiated by the specific bequests made by Mrs. Stout, which completely dispose of the estate (i.e. complete disposition of the residuary estate).

¶ 13 Moreover, where there is a blood relationship between the testator and the beneficiaries of her estate, "[t]hat fact alone forms a sufficient, independent basis" for the bequest. *In re Estate of Simpson*, 407 Pa.Super. 1, 595 A.2d 94, 98

(1991). *Cf. In re Estate of Button*, 459 Pa. 234, 328 A.2d 480 (1974) (finding undue influence where confidants were not related to testator). In *In re Estate of Simpson*, a testator made a bequest to the son of the will's proponent who was accused of exerting undue influence on the testator. 595 A.2d at 98. We refused to consider the bequest to the son in the substantial benefit analysis because the proponent's son was also the grandson of the testator. *See id.* Likewise, in the present case, both William Ransom and Sharon Ransom are Mrs. Stout's blood relatives, and we refuse to consider the bequests made to them in our analysis of whether Leslie Ransom received a substantial benefit under the will. The only benefit accruing to Leslie Ransom under the will were the executor's fees he received, and Stout admits that this alone does not constitute a substantial benefit. Brief of Appellant at 31.

¶ 14 Accordingly, we conclude that Stout failed to establish that Leslie Ransom received a substantial benefit under the will. As such, Stout was unable to establish a prima facie case of undue influence. For these reasons, we affirm the judgment of the trial court denying and dismissing William Stout's claim.

¶ 15 Judgement **AFFIRMED.**