J-A28011-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: CONSTANCE RUGGERE, DECEASED | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: JOSEPH MELODICK | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 769 MDA 2025 |

Appeal from the Order Entered May 7, 2025
In the Court of Common Pleas of Luzerne County Orphans' Court at
No(s):  4023-1459

BEFORE:  KUNSELMAN, J., McLAUGHLIN, J., and LANE, J.

MEMORANDUM BY KUNSELMAN, J.:          **FILED: MARCH 10, 2026**

Joseph Melodick appeals from the orphans' court's decree dismissing  his appeal from the register of wills' decision to admit the last will and testament of Constance I. Ruggere ("Decedent" or "Ms. Ruggere"), his mother, to probate.  He claims that Decedent's will was a product of undue influence and therefore invalid.  Upon review, we affirm.

 Decedent died on July 12, 2023.  Her husband died in January 2023, approximately 6 months earlier.  During her husband's illness, Decedent took care of him even though she was in poor health herself.

Decedent had five children: Joseph Melodick, Edwin Ruggere, Holly Bielski, Christine Ruggere, and Shirley Yuhas.

During their marriage, Decedent and her husband ("the Ruggeres") owned various properties.  They lived together in a house in Hunlock Creek, Pennsylvania, located in a secluded area on 22 acres.  In February 2023, very

shortly after her husband died, Decedent agreed to move closer to her children and bought a house in Swoyersville, Pennsylvania, Luzerne County, which Yuhas, a realtor, showed her. Originally, this house was purchased in Decedent and Yuhas' name. However, Decedent subsequently transferred the property into her name and all her children's names.

Decedent put the Hunlock Creek house up for sale. The day before she died, she executed an agreement of sale for that property.

In 2015, the Ruggeres, along with Yuhas, bought a property known as the "campground" in Dallas, Pennsylvania. The Ruggeres and Yuhas acquired this property and jointly owned it with the right of survivorship. The Ruggeres had a two-thirds interest in the property and Yuhas had a one-third interest. In 2016, the Ruggeres and Yuhas put the property into a limited liability company named Hickory Grove LLC ("LLC"). In March 2023, after her husband died, Decedent assigned her interest in the campground to Yuhas.

Over the course of their marrriage, the Ruggeres transferred various other properties to different children. Shortly before her death, Decedent transferred a property solely to Christine Ruggere, in which she resides. Another property owned by Mr. Ruggere's estate was to be transferred solely to Edwin Ruggere. Further, the Ruggeres transferred a property in Laflin, Pennsylvania, to Holly Bielski.

Decedent had a last will and testament dated and signed on March 20, 2023. In relevant part, it provided that Yuhas was the "sole [e]xecutrix." It granted all assets, except for any real property, to the five children in equal

shares, as well as any residue. Lastly, it provided that if there was any dispute as to any property, real or otherwise, Yuhas had the power and authority to divide those assets among the children in her sole judgment.

During Decedent's life Yuhas was her power of attorney.

After Decedent died, Yuhas submitted Decedent's will to the register of wills for probate. Melodick filed a caveat and an amended caveat claiming that Yuhas exerted undue influence over Decedent in executing her will. Yuhas denied Melodick's claims.

The register conducted a hearing. At the end of Melodick's case in chief, Yuhas made a motion to dismiss the caveat claiming that Melodick failed to establish a *prima facie* showing of undue influence. The register granted Yuhas' motion and dismissed Melodick's caveat. The register admitted Decedent's will to probate.

Melodick appealed to the orphans' court. The parties agreed that the court would decide the matter on the record presented to the register.

On May 7, 2025, the orphans' court denied Melodick's appeal. Upon review of the record, the court concluded that Melodick failed to prove that Yuhas exercised undue influence over the Decedent. Melodick filed a motion for reconsideration. Before the court rules on this motion, Melodick filed this timely appeal.[1]

_____

[1] Upon the filing of Melodick's notice of appeal, the court deemed his motion for reconsideration moot.

Melodick raises the following single issue for our review:

1. Did the orphan[s'] court commit an error of law and/or abuse its discretion in denying the appeal from the register of wills' dismissal of [] Melodick's caveat when the orphan[s'] court seemingly did not consider the facts of record and since the law applied to the facts presented require[d] a reversal and remand to the register?

Melodick's Brief at 3 (excessive capitalization omitted).

Melodick challenges the validity of Decedent's will. In reviewing his appeal, we observe:

In a will contest, the hearing judge determines the credibility of witnesses. The record is to be reviewed in the light most favorable to appellee, and review is to be limited to determining whether the trial court's findings of fact were based upon legally competent and sufficient evidence and whether there was an error of law or abuse of discretion.

*In re Estate of Smaling*, 80 A.3d 485, 493 (Pa. Super. 2013) (quoting *In re Estate of Reichel*, 400 A.2d 1268, 1269–70 (Pa. 1979)). "It is not our task to try the case anew. Credibility of the witnesses is for the hearing judge who has heard and seen them and the record will be reviewed by us in the light most favorable to the appellee." *In re Ziel's Estate*, 359 A.2d 728, 731 (Pa. 1976). Only where it appears from a review of the record that there is no evidence to support the court's finding or that there is a capricious disbelief of evidence may the court's findings be set aside. *In re Estate of Nalaschi*, 90 A.3d 8, 11 (Pa. Super 2014).

Specifically, Melodick claims that the orphans' court erred and/or abused its discretion in determining that he did not establish undue influence

to invalidate Decedent's will. He argues that the orphans' court ignored certain evidence and its factual findings were not supported by the evidence. In particular, Melodick maintains that the evidence showed Yuhas had a confidential relationship with Decedent to the exclusion of her siblings. According to Melodick, Yuhas did not apprise her siblings of: the purchase of the Swoyersville property and she tried to have it put into her name and Decedents' name only; Decedent's transfer of the remaining interest in the campground to Yuhas; and the execution of Decedent's will. Melodick's Brief at 20-23.

Melodick further argues that his expert's testimony showed Decedent suffered from a weakened intellect due to grief, anxiety, and depression caused by the recent death of her husband and her own physical challenges. Consequently, she was susceptible to manipulation. According to Melodick, there was no evidence to contradict this. *Id.* at 24-26, 31.

Lastly, Melodick argues that Yuhas received a substantial benefit from Decedent's will when Decedent gave her the remaining interest in the LLC and control over distribution of the property under the will. *Id.* at 31. For these reasons, Melodick maintains that this Court should reverse the decree of the orphans' court. *Id.* at 32.

We disagree.

"In making a will, an individual may leave his or her property to any person or charity, or for any lawful purpose he or she wishes, unless . . . the

will was obtained by . . . undue influence . . . . " **Nalaschi**, 90 A.3d at 11.

Our Supreme Court has addressed undue influence as follows:

> The word "influence" does not refer to any and every line of conduct capable of disposing in one's favor a fully and self-directing mind, but to control acquired over another that virtually destroys his free agency . . . . In order to constitute undue influence sufficient to void a will, there must be imprisonment of the body or mind . . . fraud, or threats, or misrepresentations, or circumvention, or inordinate flattery or physical or moral coercion, to such a degree as to prejudice the mind of the testator, to destroy his free agency and to operate as a present restraint upon him in the making of a will.

**Smaling**, 80 A.3d at 493. "[U]ndue influence is a subtle, intangible and illusive thing, generally accomplished by a gradual, progressive inculcation of a receptive mind. Consequently, its manifestation may not appear until long after the weakened intellect has been played upon." **In re Estate of Fritts**, 906 A.2d 601, 607 (Pa. Super. 2006), *appeal denied*, 916 A.2d 1103 (Pa. 2007).

Once the proponent of the will in question establishes the proper execution of the will, a presumption of lack of undue influence arises; the contestant must then come forward with evidence of undue influence. **See Smaling**, 80 A.3d at 493. To do so,

> [t]he contestant must [] establish, by clear and convincing evidence, a *prima facie* showing of undue influence by demonstrating that: (1) the testator suffered from a weakened intellect; (2) the testator was in a confidential relationship with the proponent of the will; and (3) the proponent receives a substantial benefit from the will in question. Once the contestant has established each prong of this tripartite test, the burden shifts again to the proponent to produce clear and convincing evidence which affirmatively demonstrates the absence of undue influence.

- 6 -

*Id.*

The first prong, weakened intellect, "in the context of a claim of undue influence need not amount to testamentary incapacity and will generally be proven through evidence more remote in time from the actual date of the will's execution." *Nalaschi*, 90 A.3d at 14 (quoting *In re Bosley*, 26 A.3d 1104, 1112 (Pa. Super. 2011)). There is no bright line test for weakened intellect, but our courts "have recognized that it is typically accompanied by persistent confusion, forgetfulness and disorientation." *Fritts*, 906 A.2d at 607.

> [O]ne may be physically weak but have a perfectly sound and strong mind.
>
> So long as the mind, like the captain of a stricken ship, is free to dictate direction and course, its decision will not be questioned in law even though the body be crippled with pain and the spirit awry with torment.

*In re King's Estate*, 87 A.2d 469, 473 (Pa. 1952). *See also In re Allison's Estate*, 59 A. 318 (Pa. 1904) (holding that evidence of age, sickness, distress, debility of body, physical infirmity are insufficient to show undue influence). Failure of memory does not prove incapacity, unless it is total or so extended as to make incapacity practically certain. *In re Conway's Estate*, 79 A.2d 208, 211 (Pa. 1951).

Regarding the second prong, confidential relationship, this Court has explained:

> [A] confidential relationship exists when the circumstances make it certain that the parties did not deal on equal terms, but on the

- 7 -

one side there is an overmastering influence, or, on the other, weakness, dependence or trust, justifiably reposed. A confidential relationship is created between two persons when it is established that one occupies a superior position over the other — intellectually, physically, governmentally, or morally — with the opportunity to use that superiority to the other's disadvantage.

*Smaling*, 80 A.3d at 498 (quotations and citations omitted).

"A parent-child relationship does not establish the existence of a confidential relationship nor does the fact that the proponent has a power of attorney where the decedent wanted the proponent to act as attorney-in-fact . . . . A confidential relationship only exists where there is over-mastering influence on the part of the proponents."

*Fritts*, at 608 (quoting *In re Estate of Angle*, 777 A.2d 114, 124 (Pa. Super. 2001)).

The third prong, a substantial benefit, has not been "precisely defined" by our courts. There is no hard and fast rule to "'exactly define the character of benefit or the extent of interest [that] the confidential adviser must receive.'" *In re Estate of LeVin,* 615 A.2d 38, 41 (Pa. Super. 1992) (quoting *In re Adams' Estate,* 69 A. 989, 990 (Pa. 1908)). Rather, a court's finding of whether a substantial benefit exists depends "on the circumstances of the particular case." *Smaling*, 80 A.3d at 497. Generally, a party's appointment as an executor does not constitute a substantial benefit. *See In re Estate of Stout*, 746 A.2d 645, 649 (Pa. Super. 2000). Our courts have found a substantial benefit was granted where the entire, or a majority of the estate was devised to the alleged confidential advisor. *See Smaling*, 80 A.3d at 497; *Fritts*, 906 A.2d at 609. Additionally, where there is absolute control or

distributive power over the estate, we have found a substantial benefit. ***See***

***LeVin***, 615 A.2d at 44.

Turning to the case before us, the parties stipulated to the proper execution of the will. It was then incumbent on Melodick to establish the three prongs of the test for undue influence by clear and convincing evidence. In determining whether Melodick met his burden, the court explained:

> In this case, while there was testimony that Ms. Ruggere did not want to move from her Hunlock Creek house and to the Swoyersville house and that Ms. Yuhas insisted that she move, there was also evidence that Ms. Ruggere was happy that she moved to Swoyersville and was looking forward to it. Ms. Yuhas also testified as to the legitimate reasons why she felt Ms. Ruggere needed to move closer to her family.
>
> There was evidence presented that Ms. Ruggere's other children often visited Ms. Ruggere and were involved in her day-to-day activities and care, wherein she did not solely rely on Ms. Yuhas but the help of all of her children collectively and enjoyed spending time with all of them. There was no evidence that Ms. Ruggere was isolated or manipulated to rely on just Ms. Yuhas. Ms. Ruggere's choice to not include the rest of the children in the signing of her [w]ill or [the] transferring of [her] interest [in] Hickory Grove LLC does not alone establish a confidential relationship.
>
> ***
>
> While there is evidence that Ms. Ruggere was depressed and struggling with anxiety, there was no clear and convincing evidence that Ms. Ruggere had a weakened intellect in or around the time that she signed her [w]ill. In fact, there is evidence throughout her medical records with clinical notes from hospice and social workers that indicate the opposite. Despite Ms. Fox's [(Melodick's expert's)] conclusion that due to her depression, anxiety and grief, she believed that Ms. Ruggere would have a weakened intellect, she admitted that she never met with Ms.

Ruggere nor met with the nurses or social workers that recorded the opposite findings within Ms. Ruggere's medical notes.

Lastly, . . . [w]hile Ms. Yuhas is a beneficiary of Ms. Ruggere's estate, under the terms of the [w]ill, she benefits no more or less than the other beneficiaries. The [w]ill directs the estate to be distributed equally among the beneficiaries. [Melodick] points to the interest transfer of Hickory Grove, LLC as a "substantial benefit," however, this [asset] was not a part of the estate.

It was established by each witness this interest transfer of Hickory Grove LLC to Ms. Yuhas was prior to the Decedent's death and signing of the [w]ill. There was no evidence to show that this was not what Ms. Ruggere wanted at the time of the transfer, other than the other beneficiaries' lack of knowledge of the same. While there was evidence submitted that each of the other siblings was expecting a portion of the Decedent's interest in Hickory Grove LLC, there was also evidence that Mr. and Ms. Ruggere transferred different properties in the past to each of the children in their sole capacities as well.

The standard of clear and convincing evidence is a high bar. Without meeting each element of undue influence by clear and convincing evidence, a claim of undue influence cannot be established.

Trial Court Opinion, 5/7/25, at 15-17. For these reasons, the orphans' court concluded that Melodick failed to prove by clear, strong, and compelling evidence that Decedent signed her will under undue influence. *Id.* at 17.

Upon review of the record, we conclude that the orphans' court did not err or abuse its discretion in finding that Decedents' will was not the product of undue influence and in denying Melodick's caveat. The orphans' court considered the relevant legal principles. The court thoroughly reviewed and considered all the evidence and applied it to the three-prong test to determine whether Yuhas exerted undue influence over Decedent. And, although there

were certain factors which supported Melodick's claims, there were facts which weighed more heavily against them, as the orphans' court concluded.

We note further with respect to the substantial benefit prong that our courts have found a substantial benefit where the proponent exercises control over the estate and its assets as referenced above. However, Yuhas' control over Decedent's estate is not comprehensive or absolute. Rather, that provision only applies if there is a dispute over any property. Yuhas' control is not significant enough to constitute a substantial benefit.

Thus, because the record supports the orphans' court's conclusion that Melodick did not establish, by clear and convincing evidence, that Yuhas exerted undue influence over Decedent when she executed her will, we affirm the decree of the orphans' court. No relief is due on Melodick's claim.

Decree affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 03/10/2026

- 11 -