595 A.2d 94

In re ESTATE OF Elgen M. SIMPSON, Decedent–Testatrix.

**Appeal of James R. SIMPSON, Mark A.
Simpson and Denise R. Simpson.**

Superior Court of Pennsylvania.

Argued April 17, 1991.

Filed July 18, 1991.

Petition for Allowance of Appeal Denied Nov. 25, 1991.

4

Arthur J. Stewart & David W. Swanson, Warren, for appellants.

Denise Simpson, pro se.

Barry L. Smith, Warren, for participating parties.

Before McEWEN, DEL SOLE and FORD ELLIOTT, JJ.

FORD ELLIOTT, Judge:

This is an appeal from a final decree entered August 7, 1990, in the Court of Common Pleas of Warren County, Orphans Court Division. The final decree admits to probate the Last Will and Testament of Elgen M. Simpson, dated March 12, 1987, and a Codicil to the same dated April 29, 1987. The decree further provides that the bequests to James R. Simpson, Mark A. Simpson, and Denise R. Simpson (Curren) are forfeited. For the reasons which follow we affirm the final decree of the trial court.

The factual background giving rise to this action is convoluted, at best, yet a concise summary of those facts is as follows. The decedent, Elgen Simpson, was widowed in 1986. At that time Elgen's family consisted of four grandchildren, all born to Elgen's only child, Robert J. Simpson. Robert J. Simpson had predeceased Elgen. Robert had been married twice and three of the grandchildren were from the first marriage and one grandchild was from Robert's second marriage. The three grandchildren of Robert's

first marriage: James, Mark, and Denise are appellants herein. The grandchild of Robert's second marriage, Robert P. Simpson, along with his mother, Judy Simpson Campbell, Robert's second wife, are appellees herein. In 1983 the decedent had drafted a will which left equal shares to all four grandchildren. On March 26, 1987, desiring to account for cash gifts to her two oldest grandchildren, Mark and Denise, decedent revised her will to leave a greater share of her estate to the two younger grandchildren, James and Robert. The decedent enlisted the services of Attorney Kenneth Crosby to draft the March 26, 1987 will. At some point after that will had been drafted, Denise Simpson found Attorney Crosby's consultation bill in the decedent's purse. This discovery prompted Mark and Denise to attempt to discover the contents of the new will. Both the decedent and Attorney Crosby were questioned regarding the contents of the new will. Although decedent protested that she was displeased with their conduct, both Mark and Denise continued their efforts to discover the contents of the new will. This further strained the already troubled relationship between the decedent and these two grandchildren. On April 29, 1987, the decedent executed a codicil to the March 26, 1987 will. The codicil revoked the bequest to James of one-half of the residue of the estate and bequeathed the same to Judy Simpson Campbell. On September 14, 1987, Mark, Denise, and James Simpson petitioned the court for appointment of a guardian of Elgen's estate alleging that on account of her advanced age she had suffered severe degenerative illness which brought about mental infirmities which left her unable to manage her property. After service of the guardianship petition, decedent perceived she would be committed to a nursing home. Thereafter, on September 19, 1987, the decedent committed suicide.

On September 23, 1987, the Register of Wills in Warren County issued letters testamentary to Marine Bank admitting to probate the Last Will and Testament of Elgen

Simpson dated March 26, 1987, and the Codicil thereto dated April 29, 1987.

On February 29, 1988, James R. Simpson petitioned the Orphans Court Division for citation to show cause why an appeal from the decree of the Register of Wills, admitting to probate the Last Will and Testament of testatrix dated March 26, 1987, and the Codicil thereto dated April 29, 1987, should not be sustained and the decree of the Register be opened to probate the Last Will and Testament dated September 12, 1983, as testatrix's Last Will and Testament or, in the alternative, why the Codicil of April 29, 1987, should not be stricken and the Last Will and Testament dated March 26, 1987, without the Codicil, be sustained as the Last Will and Testament of testatrix. James Simpson based his will contest on the grounds that; one, testatrix lacked testamentary capacity to execute her last will and testament, and two, that Judy Simpson Campbell exercised undue influence over testatrix. Judy Simpson Campbell had been retained by testatrix's grandchildren to be a companion and caretaker for testatrix after the demise of her husband.

A bench trial commenced on June 26, 1989, on the issues of testamentary capacity and undue influence. Subsequent to the testimony of Attorney Crosby and Dr. Walters, the contestant, James Simpson, withdrew the grounds of lack of testamentary capacity leaving for disposition the issue of whether Judy Simpson Campbell exercised undue influence over Elgen Simpson with regards to the March 12, 1987 will.

Following eight days of trial the Honorable Robert L. Wolfe entered a Decree Nisi dismissing James Simpson's petition to show cause why an appeal from the decree of the Register of Wills admitting to probate the testamentary writings of Elgen Simpson dated March 26, 1987 and April 29, 1987 should not be sustained. The order further provided that the Last Will and Testament dated March 26, 1987, and Codicil thereto dated April 29, 1987, be admitted to probate and that the forfeiture clause in the codicil be

exercised against James Simpson, Mark Simpson and Denise Simpson.

Timely exceptions were filed to the Decree Nisi, and the same were dismissed by order of a Decree Absolute filed on August 7, 1990. This timely appeal followed.

Appellants have raised eight issues for our consideration.

I. Did the lower court commit an error of law in failing to consider direct evidence of undue influence?

II. When a confidential relationship exists between a testatrix and beneficiary (appellee) and when financial irregularities occur in the transactions between the two, whether the beneficiary (appellee) has the burden of proof to explain these financial irregularities and fraud?

III. When proving undue influence by indirect evidence, whether the element of weakened intellect (the second prong of the tripartite test) can be equated with testamentary incapacity?

IV. When proving undue influence by indirect evidence, whether the element of substantial benefit (the third prong of the tripartite test) can be satisfied only when the beneficiary personally receives one half or greater of the testatrix's estate?

V. Whether weakened intellect is established when there exists uncontested testimony, that testatrix suffered from brain atrophy and at times exhibited confusion, paranoia, forgetfulness and other symptoms which long-time acquaintances of testatrix described as drastic changes?

VI. Whether a will's forfeiture clause may be enforced against beneficiaries who did not join as party petitioners to the will contest and who did nothing more to participate in the contest than give testimony when called to the witness stand?

VII. Whether the showing of probable cause (required to negate the effect of the forfeiture clause) must rise to the level of the showing of undue influence?

VIII. Whether testimony offered to impeach the credibility of the appellee on issues of financial fraud is relevant?

We shall address appellants' first five issues together as they all relate to the same basic question; the propriety of the trial court's conclusion that appellee did not exert any undue influence over testatrix. Then we will consider issues six and seven as they both relate to the applicability of the forfeiture clause. Finally, we will consider appellants' eighth issue.[1]

█ Appellants' first five issues all address various aspects of the trial court's decision that appellee did not exert undue influence over the testatrix with respect to her decision to change her will. At the outset we note that our scope of review in a case of the instant nature is extremely limited. As this court stated in *Estate of Bankovich*, 344 Pa.Super. 520, 522–23, 496 A.2d 1227, 1229 (1985):

> Our review in [a will contest] is limited to determining whether the findings of fact approved by the court en banc rest on legally competent and sufficient evidence, and whether an error of law has been made or an abuse of discretion committed. It is not our task to try the case anew. The rule is particularly applicable 'to findings of fact which are predicated upon the credibility of witnesses, whom the judge has had the opportunity to hear and observe, and upon the weight given to their testimony.' (citations omitted).

█ The burden of proving undue influence is on the contestant since a presumption of validity arises once a will is probated. *See In re Estate of Clark*, 461 Pa. 52, 334

---

**1.** We take this opportunity to caution appellants' counsel that in the future they would be wise to adhere strictly to the Rules of Appellate Procedure. This court does not look favorably upon the fact that appellants' brief is eighty-two pages in length (one hundred and forty-eight pages if one includes the attachments), which is far in excess of the fifty page maximum limit set forth in Rule 2135. It is well within the province of this court to sanction a party who does not strictly comply with these rules, including a sanction as severe as quashing an appeal. *See* Pa. R.A.P. No. 2101.

A.2d 628 (1975). To meet this burden, contestants must establish by clear and convincing evidence that: (1) the testator was of weakened intellect when the will was executed; (2) there was a person in a confidential relationship with the testator; and (3) the person in the confidential relationship receives a substantial benefit under the will. It is only after all three elements are satisfied that the burden shifts to the proponent of the will to show the absence of undue influence. *See Estate of Ross*, 316 Pa.Super. 36, 462 A.2d 780 (1983).

 The trial court found that although there was a confidential relationship between testatrix and the proponent of the will, Judy Simpson Campbell, the testatrix was not of weakened intellect when the will was executed and the proponent did not receive a substantial benefit under the will. After careful review, we find that the evidence in the record supports the findings of the trial court. Clearly there was a confidential relationship between the proponent and the testatrix. Neither party disputes that fact. The proponent became testatrix's day-time companion after the death of testatrix's husband. She assisted the testatrix with her daily affairs, and exercised a de facto power of attorney by signing testatrix's name to her checks. However, it is quite clear that the mere fact that a beneficiary under a will stood in a confidential relationship with the testatrix, does not mean that the burden of proof is shifted to the proponent to prove that there was no undue influence. Before the burden of proof will shift, the contestant must also satisfy the other two elements in the three part test outlined above. *See In re Estate of Button*, 459 Pa. 234, 328 A.2d 480 (1974). The trial court concluded that the other two elements were not satisfied in the present case. Regarding the requirement that the person in the confidential relationship with testatrix receive the bulk of the estate or a substantial benefit, the trial court concluded that simple arithmetic demonstrates that proponent received only 25% of the estate under the contested will and codicil. Appellants argue that the court erred by not considering

the amount bequeathed to proponent's son, when determining whether proponent received a substantial share. Appellants fail to cite to any authority to support this contention. Furthermore, logic dictates against it. Proponent's son was one of testatrix's four grandchildren. That fact alone forms a sufficient, independent basis for the bequest to him. Appellants' argument treats Robert as if he had no connection to testatrix other than the fact that he was proponent's son. Also, under the March 26, 1987 will, both Robert and James received increased shares to offset against gifts that had been given to the other grandchildren by testatrix during her lifetime. There is no basis in either law or logic for including the share bequeathed to Robert in the total of proponent's bequest. Appellants would also have this court consider that through the operation of the forfeiture clause, proponent has indeed inherited 50%, which they argue is a substantial share. Again, such an argument lacks any foundation. The forfeiture clause only came into effect after testatrix's death and as the result of actions taken by the other grandchildren. For proponent's share to have been the result of undue influence that share would have to have been substantial without the operation of the forfeiture clause. Otherwise, the alleged undue influence would have had nothing to do with the amount of the share. Rather the size of the share resulted from actions by three of the grandchildren. Thus, the lower court was correct in not including those amounts when figuring the size of proponent's share.

█ The contestant likewise failed to prove by clear and convincing evidence that the testatrix was of weakened intellect. The record is replete with evidence to the contrary. Citing all of the record references at this point would be judicially inefficient. Rather, it is sufficient to say that based upon our thorough review of the record we conclude that the trial court's findings of fact in this regard are supported by competent and sufficient evidence. This is particularly true given the fact that witness credibility played a vital role in this case and the trial court was in the

best position to determine the weight to be accorded the testimony of each witness.

Therefore, we conclude that appellants' issues which allege trial court error or abuse of discretion as to the question of undue influence, are without merit. Clearly, the contestant failed to satisfy the three part burden of proof necessary to make out a prima facie case that the will was the product of undue influence.

We now turn our attention to appellants' sixth and seventh issues regarding the forfeiture clause. The issues concern, first, whether the clause ought to be enforced against James for filing a contest to the will, and second, whether the forfeiture clause ought to be enforced against Denise and Mark for allegedly conspiring with and assisting their brother in bringing the contest. The first issue, whether James' bequest should be forfeited, is subject to the test outlined by our Supreme Court in *In re Friend's Estate*, 209 Pa. 442, 448, 58 A. 853, 855–56 (1904).

> Whether there was probablis causa litigandi must, in every case, be for the court distributing the estate of the testator; and when it is clear that there was such cause the same decree ought to be made that was made here. If it is not clear, or if it is doubtful whether there was probable cause, the will of the testator should be regarded as supreme, and his direction to forfeit carried out. A disappointed beneficiary under a will is not to be encouraged to make a contest to set it aside, and when he does so, in the face of notice from the testator that he shall have nothing if he attempts to strike down his provisions, he must understand the imminent risks he runs.

Applying this standard the trial court concluded that the contestant, James Simpson, lacked probable cause to contest the will and did so only for vindictive reasons. Therefore, the court ordered that his share be forfeited. We agree with the trial court's decision. The record indicates that for the two year period preceding testatrix's death, James Simpson lived in Texas and Michigan. During that period he had no opportunity to observe proponent exercise

any undue influence over testatrix. Any notions that James had regarding undue influence were the product of conversations with his brother and sister. James merely suspected that Judy Simpson Campbell must have exercised undue influence over testatrix, since he could fathom no other reason why his grandmother would change her will. However, James had no evidence to substantiate these suspicions. By his own testimony James admitted that he had no knowledge of Judy Simpson Campbell doing anything wrong, but rather he brought the contest because he did not get what he wanted under the will. Yet, James proceeded with this action in an attempt to thwart the intentions of testatrix and therefore must now suffer the consequences. Mere unsubstantiated suspicions certainly can not rise to the level of probable cause so as to avoid the imposition of the forfeiture clause.

█ The second part of the forfeiture question, however, raises a more complex problem for this court. The issue of whether the forfeiture clause was properly enforced against Mark and Denise, who were not named parties in this contest, presents a question of first impression in this Commonwealth. In order to address properly this question it is necessary to bear in mind two key elements from *Friend's Estate, supra.* From that case we learn that forfeiture clauses are to be strictly construed, but also that a will must always be interpreted with the primary concern of doing justice to the intent of the testatrix. With that in mind we must turn to our sister jurisdictions for guidance on this issue.

While there is some disagreement among the courts in the various jurisdictions which have addressed this issue, we are of the opinion that the better reasoned approach is to impose the forfeiture clause against those beneficiaries who aid in the will contest, even if they are not nominally parties to the contest. To hold otherwise would be to exalt form over substance. The long-standing approach in jurisdictions such as New York and New Jersey has been that where a legatee acts in concert with another whereby the

other becomes the nominal party in the will contest; the legatee is just as real a contestant and is equally instituting and prosecuting an action to defeat the will. *In re Pasternack,* 52 Misc.2d 413, 275 N.Y.S.2d 703 (1966); *Kayhart v. Whitehead,* 77 N.J.Eq. 12, 76 A. 241 (1910). We conclude that such a rule is beneficial for two reasons. First, the rule honors the idea that the will is to be construed so as to promote the intentions of the testator. Second, the rule promotes the favorable public policy of limiting costly, time-consuming litigation against the estate when such litigation is not founded upon probable cause but rather upon disappointment over amount received. As noted by the Oklahoma Supreme Court;

> A forfeiture clause is an executory limitation which is employed to effect testamentary intention, and its use is within the province of the testator if it does not contravene public policy or a rule of law ... Because no contest clauses protect estates from costly, time consuming and vexatious litigation; and serve to minimize family bickering concerning the competency and capacity of the testator, as well as the amounts bequeathed, they are favored by public policy.

*Matter of Estate of Westfahl,* 674 P.2d 21, 23 (Okl.1983).

Applying this rule to the present case we agree with the trial court's decision to enforce the forfeiture clause against Mark and Denise Simpson. As the trial court noted, it takes little effort to conclude, based on the entire record, that the contest of this will was a collaborative effort among James, Mark and Denise.

The trial court found that the contestant was aided and assisted by his brother and sister in his contest of the will. During the turmoil preceding testatrix's death it was Denise and Mark who retained counsel to look into supposed financial irregularities and to attempt to ascertain the contents of the new will. Furthermore, appellants all testified that they had met and discussed which one would actually bring the will contest. They all noted that the selection of James was a business decision. Mark was present through-

out all depositions until he was ordered not to attend any more. Furthermore, counsel for James, the only named party, objected to and thwarted counsel for proponent's attempt to negotiate this matter with Mark and Denise. Clearly this is a situation where Mark and Denise Simpson were contesting this will every bit as much as their brother, James, the nominal party.

Finally, we agree with the conclusion of the trial court that even the letter from Denise to the trial court, wherein Denise attempted to explain that she was not a party to this will contest, offers further support for the conclusion that this will contest was a collaborative effort whereby one of the grandchildren would contest the will, and the others would still be protected should that contest prove to be a failing effort.

Before I state my views I would like to say that, before the will was even contested, I had to make a decision whether to be part of the case or to support my younger brother through the inevitable journey he was about to undergo. I realize life is not fair and that is why we have a judicial system. I have been part of a jury twice in Warren, Pennsylvania, and therefore have some knowledge and experience with the "system," if I may call it that. My decision, not to contest the will, was based on the "system" and statistics regarding this type of case and also, as some insurance if my brother lost his case. What I felt to be a good decision has turned out to be a bad strategy.

Finally, this conclusion is consistent with the basic tenet that a will is to be construed to do justice to the intent of the testatrix. Attorney Crosby, the scrivener of the will in question and the codicil, noted that testatrix took great care with him to draft a forfeiture clause that would not only disinherit anyone who filed a contest to the will, but also anyone who *cooperated* in contesting the will. By adopting the rule we do today, we likewise take great care to honor the intentions of the testatrix. Finally, as noted by the Alabama Supreme Court when confronted with this issue,

to adopt any other rule would be, in effect, to permit the law to place a premium on artifice, and suffer the just reproach of seeking after the shadow instead of the substance. *Donegan v. Wade,* 70 Ala. 501 (1881). This court will not allow such a premium to be placed on artifice.

Appellants final issue concerns the ruling of the trial court not to admit evidence that Judy Campbell Simpson failed to report payment of wages from testatrix to the internal revenue service and other individuals in unrelated matters. The trial court ruled that such evidence was irrelevant in this proceeding and therefore inadmissible. Additionally, it is clear from the record that all parties to this action knew of these wages. Appellants offer no valid arguments as to why the trial court erred with respect to this ruling. We agree with the trial court that such evidence was irrelevant and therefore inadmissible.

The final decree of the trial court is affirmed. The Last Will and Testament of Elgen M. Simpson, dated March 12, 1987, and the Codicil thereto, dated April 29, 1987, are admitted to probate. The bequests to James R. Simpson, Mark A. Simpson, and Denise R. Simpson are forfeited.

Decree affirmed.