J-A18015-19

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| IN RE: TRUST OF ALBERT F. QUINN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: GERALD QUINN | : | No. 1762 WDA 2018 |

Appeal from the Order Entered November 15, 2018
In the Court of Common Pleas of Armstrong County Orphans' Court at
No(s):  No. 03-08-026

| IN RE: TRUST OF ALBERT F. QUINN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: SARAH Q. JOHNSTON | : | |
| AND LINDA QUINN | : | No. 2 WDA 2019 |

Appeal from the Order Entered November 15, 2018
In the Court of Common Pleas of Armstrong County Orphans' Court at
No(s):  No. 03-08-026

BEFORE:  BOWES, J., NICHOLS, J., and MUSMANNO, J.

MEMORANDUM BY BOWES, J.:                    FILED JANUARY 24, 2020

These consolidated cross-appeals follow the determination of the orphans' court that overruled the objections of Gerald Quinn to the account of the Trust of his father, Albert F. Quinn, but granted in part Gerald's[1] request for attorney fees.  Specifically, Gerald contends, inter alia, that the orphans' court erred in holding that the actions of his siblings, Randall Quinn (now deceased) and Sarah Johnston, did not violate the Trust's no-contest clause, and that Randall's widow Linda Quinn is not disinherited as a result of Randall's

_____

[1] As most of the people involved in this appeal share the same surname, we refer to them by their first names for the sake of clarity and convenience.

conduct. In their cross-appeal, Sarah and Linda (collectively "Appellees") challenge the award of attorney fees to Gerald. As we agree with Gerald that Randall and Sarah violated the no-contest clause, and that Linda is not entitled to Randall's share of the Trust distribution, we vacate the order and remand for proceedings consistent with this memorandum.

The background of this case is as follows, based upon the findings of fact of the orphans' court. In November 2001, Albert created the Trust, which was a revocable living trust that became irrevocable upon Albert's death. The instrument made Albert the first trustee of the Trust, and named Randall as the first successor trustee following Albert's death. During Albert's lifetime, he retained full right to direct distribution of any or all of the Trust's income or principal as he saw fit. Quinn Living Trust, 11/19/01, at 4-1. Albert was permitted to add assets to the Trust from time to time but to retain possession of them. Id. at 4-3. Albert's will, executed the same day as the Trust instrument, directed that after his death, his residuary estate be distributed to the Trust. Albert expressly indicated the point of the Trust was to avoid having his assets probated. Id. at 11-10.

Randall, Sarah, and Gerald are the named beneficiaries, with each designated by name to receive a distribution of one-third of the Trust. Specifically, the trust instrument provided that none of the three beneficiaries was to receive any distributions of trust income. Rather, all net income from each beneficiary's share was to be added to the trust principal which, in turn,

was to be "immediately" paid by the successor trustee to or for the benefit of each beneficiary "free of trust." Quinn Living Trust, 11/19/01, at 8-1 – 8-3.

At the time Albert executed the Trust, Randall was married to Linda, and the couple had no children. Sarah, who was not married, had three daughters. Gerald was unmarried and had no children. The trust instrument provided that if Randall died before distribution, his share was to go to Linda, if she was still living; otherwise, Randall's share would lapse. Sarah's share was to be distributed to her descendants if she predeceased the Trust distribution, or would lapse if she had none living at that time. In the event that Gerald died prior to trust distribution, his share was to lapse. Lapsed shares were to be reallocated among the remaining beneficiaries.

Notable for purposes of this appeal, the Trust instrument also contains a no-contest clause, which provides as follows, in relevant part:

> If any . . . beneficiary under my Trust . . . directly or indirectly . . . does any of the following, then in that event I specifically disinherit each such person, and all such legacies, bequests, devises and interests given to that person under my Trust or any amendment to it . . . shall be forfeited and shall be distributed as provided elsewhere herein as though he or she had predeceased me without issue:
>
> . . . .
>
> g. in any other manner contests my Trust or any amendment to it executed by me, or in any other manner, attacks or seeks to impair or invalidate any of its provisions;
>
> h. conspires with or voluntarily assists anyone attempting to do any of the above acts.

Expenses to resist any above contest or other attack of any nature upon any provision of my Trust or any amendment to it shall be paid from the trusts created hereunder as expenses of administration.

. . . .

If any person or entity, singularly or in conjunction with any other person or entity, directly or indirectly, in any court, contests the validity of my Trust Agreement, including any amendments thereto, then the right of that person or entity to take any interest in my Trust Estate or to act in any fiduciary capacity shall cease, and the demise of that person (and his or her descendants) or entity shall be deemed to have occurred prior to my death, as applicable.

Quinn Living Trust, 11/19/01, at 12-3 – 12-5.

Albert died in November 2007. Randall became trustee and opted to administer the trust without the assistance of legal counsel.[2] Sarah and Gerald disagreed among themselves concerning the distribution of some Trust assets, in particular the Quinn family farm ("the Farm"). Sarah maintained that Albert had desired that the Farm ultimately go to Sarah's daughters, who had a particular emotional attachment to it. However, the Trust instrument contained no such provision. Rather, the trustee was expressly empowered

_____

[2] Randall explained his antipathy for attorneys to Gerald as follows:

I'm not going to get a lawyer. Any small town where there is one lawyer, he starves to death. In a town with two lawyers, they both do well. You seem to want to become the dupe of the legal system. . . . Don't you think you have enough smarts to argue your own case?

N.T. Hearing, 3/13/18, at 52-53, Exhibit 7.

"to make any distribution or payment in kind or in cash, or partly in kind and partly in cash, and to cause any share to be composed of cash, property or undivided interests in property different in kind from any other share . . . ."[3] Quinn Living Trust, 11/19/01, at 11-5.

When apprised of Sarah and Gerald's disagreement about the disposition of the Farm, Randall initially took the position that the Trust language did not support Sarah's position. Randall advised Sarah that, whatever intentions their parents may have expressed elsewhere, the Trust document did not indicate that her daughters were to ultimately inherit the Farm; rather, it provided that Gerald owns one-third and "can take his portion and do whatever he wants with it[.]" N.T. Hearing, 3/13/18, at 23, Exhibit 3. "After several years of attempted negotiations, during which the several beneficiaries employed the services of a mediator and discussed several possibilities for dividing the Farm, no agreement was reached. During and after this period, the relationships among the beneficiaries degenerated." Orphans' Court Opinion, 11/15/18, at 5 (paragraph numbers and breaks omitted).

> As the dispute among the three beneficiaries intensified, Randall became less sympathetic with Gerald's position and began to pressure him into either agreeing with Sarah's position or to some other form of settlement. This included attempts by Randall

_____

[3] One unfortunate result of his Randall's eschewing trained legal assistance was his failure to appreciate the extent of his authority as the successor trustee to make these decisions rather than force a consensus among the beneficiaries as to the distribution.

to make Gerald's participation in Trust administration increasingly difficult and expensive, described in his own words as playing legal "hard ball."

Id. For example, Randall informed Gerald: "Because you are being a shit over this and trying to deny our parents' fondest dreams, my plan is to make it increasingly uncomfortable for you. I will deny you everything I can think of. ([A]nd I can think of a lot of things[.])" N.T. Hearing, 3/13/18, at Exhibit 4. Randall openly stated to Gerald:

> I am going to wait until you sue me then I'm going to counter sue with a series of lawsuits that will be meant to beggar you.
>
> You can look at that as a threat or a promise.
>
> I have been purposely dragging my feet hoping that you will (somehow) come to your senses.

N.T. Hearing, 3/13/18, at Exhibit 7.[4]

_____

[4] Randall, operating as he was without legal training or counsel, erroneously believed that the Trust instrument permitted him to keep the Farm within the Trust for as long as twenty-one years despite the provision for immediate distribution of Trust assets. See N.T. Hearing, 3/13/18, at Exhibit 10 ("Article Twelve, Section 2 of the Trust clearly states that I am not bound by the Trust to divide the real estate for up to twenty-one years."). In actuality, that provision addresses the Rule Against Perpetuities, stating as follows:

> Section 2.        The Rule Against Perpetuities
>
> Notwithstanding any other provision of my Trust Agreement; unless sooner terminated or vested in accordance with other provisions of my Trust Agreement, all interests not otherwise vested, including, but not limited to, all trusts and powers of appointment created hereunder, shall terminate: (i) one day prior to twenty-one (21) years after the death of the last survivor of the group composed of me, those beneficiaries described herein

Ultimately, Gerald involved the orphans' court in the dispute through a petition for the filing of an account. Gerald requested that the court issue a rule to show cause why Randall should not be required to file an accounting for the trust administration from the time of Albert's death in 2007 through November 2010. In response, Randall filed a rejoinder to Gerald's petition wherein he, inter alia, declined to admit that Gerald is Albert's son, and instead requested that the court require Gerald to provide a DNA sample and hold the proceedings in abeyance until Gerald proved he was Albert's son. See Rejoinder to Petition, 2/11/19, at 2.

In October 2011, nearly four years after Albert's death, Randall filed a motion to exclude Gerald as a beneficiary of the Trust, citing Gerald's request for an accounting as a violation of the Trust's no-contest clause because Gerald "in essence was attempting to force an in-kind distribution of the real estate in the Trust." Orphans' Court Opinion, 11/15/18, at 7. Randall requested at one point that the court exclude Gerald and his heirs from

_____

and my lineal descendants living on the date of my death or (ii) if longer, such period as may be authorized under the laws of the state identified in the Governing State Law Section of this Article. At that time, distribution of all principal and all accrued, accumulated and undistributed income shall be made to the persons (or their representatives as authorized herein) then entitled to distributions of income or principal and in the manner and proportions herein stated irrespective of their then attained ages.

Quinn Living Trust, 11/19/01, at 12-1.

receiving any real property from the Trust, and at another that Gerald be excluded as a beneficiary entirely. Motion to Exclude, 10/3/11, at 3.

Sarah supported Randall in pursuing this course of action. See N.T. 3/13/18, at 117. Sarah, an English teacher, proofread and suggested edits for Randall's drafts, including the motion to exclude and the motion for summary judgment. See id. at 118-22. Sarah and Randall engaged in communications in which they discussed how the Farm would be handled if Gerald's share lapsed. Orphans' Court Opinion, 11/15/18, at 9.

Randall moved for summary judgment on the exclusion motion. However, before the Court disposed of the motion, Randall filed in April 2012 a proposed disposition of the Trust, wherein he suggested that all of the remaining Trust assets be liquidated, and the resultant funds distributed in equal shares to the three beneficiaries. Shortly thereafter, Randall resigned as trustee.

Sarah became the successor trustee, and, in June 2012, withdrew the requests that Gerald take a DNA test and be excluded for violation of the no-contest clause. The orphans' court entered orders dismissing those motions and appointing Roger T. Mechling, Esquire as successor trustee upon the consent of Sarah and Gerald. Randall died on October 25, 2012.

Ultimately, Attorney Mechling liquidated most of the Trust assets and filed an amended final account on December 2, 2015. Therein, he proposed to distribute one-third of the resultant cash, bonds, and oil, gas, and mineral

rights each to Linda, Sarah, and Gerald. Gerald filed exceptions and objections to the account, contending that Randall, Linda, and Sarah violated the Trust's no-contest clause by "contest[ing] the directives of the Trust and otherwise act[ing] in violation of the No-Contest Clause generally and specifically. . . ." Exceptions and Objections, 1/6/16, at 2, 4. As specific instances of violations, Gerald cited Randall's DNA motion, Randall's motion to exclude, and Sarah's support/conspiring with Randall in pursing those filings. Id. at 3, 4. Gerald also sought reimbursement of attorney fees and costs from the Trust. Id. at 5-7.

Following additional litigation in which the parties responded and objected to each other's filings, the orphans' court held a hearing on the exceptions on March 13, 2018, at which Gerald, Sarah, and Linda testified. Thereafter, the parties filed post-hearing briefs and proposed findings of fact.

On November 15, 2018, the orphans' court overruled Gerald's exceptions and objections except for his request for attorney fees. The orphans' court concluded that Randall's DNA motion and motion to exclude Gerald as a Trust beneficiary lacked any basis in law or fact, and that Randall's conduct was vexatious and arguably in breach of his fiduciary duties as Trustee. See Orphans' Court Opinion, 11/15/18, at 14-17. However, the orphans' court found that Randall's intent was to force Gerald to agree to the distribution proposed by Sarah and Randall, not to impair or invalidate the provisions of the Trust granting Gerald one-third of the assets. See id.

Accordingly, the court found no violation of the no-contest clause by Randall. The orphans' court further held that, even if Randall did violate the no-contest clause, (1) Linda is still entitled to Randall's share, and (2) Gerald failed to prove that the assistance Sarah supplied to Randall's pursuit of his motions rose to the level of conspiring with Randall to violate the no-contest clause. Nonetheless, the court awarded Gerald a portion of the requested attorney fees, not under the terms of the Trust, but based upon 42 Pa.C.S. § 2503(7), which allows a court to award attorney fees for defense of vexatious conduct. Orphans' Court Opinion, 11/15/18, at 19-20.

The parties timely filed their respective appeal and cross-appeal following the entry of the November 15, 2018 order. Thereafter, the parties and the orphans' court complied with Pa.R.A.P. 1925. This Court consolidated the appeals sua sponte, the parties filed their briefs, and the case was heard at oral argument. As such, the matter is ripe for our decision.

Gerald presents this Court with the following issues, which we have re-ordered for ease of disposition:

1. Whether the [orphans'] court erred by finding that Randall . . . did not violate the Trust's [no contest] clause when Randall engaged in vexatious conduct against Gerald . . . by filing multiple motions without probable cause in order to have the [orphans'] court declare that Gerald was disinherited and prohibited from receiving anything from the Trust, with the [orphans'] court eventually dismissing those motions with prejudice.

2. Whether the [orphans'] court erred when it interpreted the provisions of the Trust so as to find that even if Randall would be disinherited from the Trust for a violation of the

Trust's [no-contest] clause, Randall's share of the Trust's assets would go to Linda, Randall's wife, when such an interpretation lifts the Trust's general terms over the Trust's specific language applicable to this situation, makes the [no contest] clause meaningless, and otherwise goes against the express language of the Trust.

      3.    Whether the [orphans'] court erred by finding that Sarah . . . did not violate the Trust's [no contest] clause when she aided and conspired with Randall to disinherit Gerald by editing and making suggestions regarding the improper motions Randall filed to disinherit Gerald.

      4.    The [orphans'] court erred by refusing to award Gerald all of his attorney fees in this matter because should this Court agree that Randall and Sarah did violate the [no contest] clause, then, pursuant to the language of the Trust, Gerald is due all of his attorney fees because he was acting to resist an attack on the directives of the Trust by Randall and Sarah as set forth herein.

Gerald's brief at 5-6. Sarah and Linda present one question: "Did the [orphans' c]ourt err in awarding Gerald any attorney's fees, given the circumstances of the case[?]" Appellees' brief at 2.

We begin our consideration of these questions with an examination of the applicable law.

The findings of a judge of the orphans' court division, sitting without a jury, must be accorded the same weight and effect as the verdict of a jury, and will not be reversed by an appellate court in the absence of an abuse of discretion or a lack of evidentiary support. . . . In reviewing the orphans' court's findings, our task is to ensure that the record is free from legal error and to determine if the orphans' court's findings are supported by competent and adequate evidence and are not predicated upon capricious disbelief of competent and credible evidence.

In re Jackson, 174 A.3d 14, 23 (Pa.Super. 2017) (internal quotation marks and unnecessary capitalization omitted). However, the interpretation of wills

- 11 -

and trust instruments is a question of law for which our standard of review is de novo and our scope of review is plenary. See id. at 29.

"When interpreting a trust agreement, the intent of the settlor is paramount, and if that intent is not contrary to law, it must prevail." In re Cohen, 188 A.3d 1208, 1214 (Pa.Super. 2018). The settlor's intent is determined from an examination of the following: "(a) all the language contained in the four corners of the instrument; (b) the distribution scheme; (c) the circumstances surrounding the testator or settlor at the time the will was made or the trust was created; and (d) the existing facts." Id. (cleaned up). This Court must "give effect, to the extent possible, to all words and clauses in the trust document." In re Estate of Loucks, 148 A.3d 780, 782 (Pa.Super. 2016). "However great the temptation is to supply terms in accordance with what the settlor presumably would have provided had the omission been called to his attention, the court is without power to reform an unambiguous instrument." In re Ins. Tr. Agreement of Sawders, 201 A.3d 192, 197 (Pa.Super. 2018).

"Because no contest clauses protect estates from costly, time consuming and vexatious litigation; and serve to minimize family bickering concerning the competency and capacity of the testator, as well as the amounts bequeathed, they are favored by public policy." In re Estate of Simpson, 595 A.2d 94, 100 (Pa.Super. 1991) (internal quotation marks omitted). Provisions penalizing a person for contesting a trust are enforceable

only if the person lacked probable cause to institute the contest. 20 Pa.C.S. § 2521. As noted above, the orphans' court in the case sub judice determined that Randall lacked probable cause to file his DNA request or the motion to exclude. See Orphans' Court Opinion, 11/15/18, at 14-17. However, it held that Randall's filings did not violate the no-contest clause because Randall sought to force Gerald to agree as to the disposition of the Farm, not to deprive Gerald of his one-third share of the Trust assets. See id.

Gerald argues that Randall's vexatious conduct constitutes a violation of the no-contest clause because "Randall was attempting to alter the distribution scheme of the Trust . . . in an attempt to force Gerald to agree to what Randall wanted the Trust to provide instead of what it actually did provide." Gerald's brief at 33. In addition, Gerald contends that Randall's motion to exclude "specifically and unequivocally sought to disinherit Gerald" and the orphans' court should not have ignored Randall's prayer for relief in favor of its belief that "Randall didn't really want what he explicitly said he wanted[.]" Id. at 37. Further, in responding to Randall's motion back in 2011, Gerald advised the court that all he was asking was for Randall to do his job as Trustee pursuant to Article Eight, Section One of the Trust instrument: "My Trustee shall immediately pay or apply to the benefit of such beneficiary all principal from such beneficiary's trust share free of trust." Answer to Motion to Exclude, 10/25/2011, at ¶ 3.

We agree with Gerald that the court erred in holding that Randall did not violate the no-contest clause. Again, the language of Albert's no-contest clause is as follows:

> If any . . . beneficiary under my Trust . . . directly or indirectly . . . does any of the following, then in that event I specifically disinherit each such person, and all such legacies, bequests, devises and interests given to that person under my Trust or any amendment to it . . . shall be forfeited and shall be distributed as provided elsewhere herein as though he or she had predeceased me without issue:
>
> . . . .
>
> > g.    in any other manner contests my Trust or any amendment to it executed by me, or in any other manner, attacks or seeks to impair or invalidate any of its provisions;
> >
> > h.    conspires with or voluntarily assists anyone attempting to do any of the above acts.
>
> Expenses to resist any above contest or other attack of any nature upon any provision of my Trust or any amendment to it shall be paid from the trusts created hereunder as expenses of administration.
>
> . . . .
>
> If any person or entity, singularly or in conjunction with any other person or entity, directly or indirectly, in any court, contests the validity of my Trust Agreement, including any amendments thereto, then the right of that person or entity to take any interest in my Trust Estate or to act in any fiduciary capacity shall cease, and the demise of that person (and his or her descendants) or entity shall be deemed to have occurred prior to my death, as applicable.

Quinn Living Trust, 11/19/01, at 12-3 – 12-5 (emphases added).

The Trust instrument unambiguously prohibited, upon pain of forfeiture, any beneficiary from acting in any manner to impair any of the Trust's provisions. The Trust's provisions stated that Gerald was entitled to distribution of one-third of the principal of the Trust "immediately . . . free of trust." Id. at 8-3. The evidence accepted by the orphans' court establishes, by Randall's own words, that, knowing full well that Gerald had the right under the Trust documents to do as he pleased with his one-third, Randall boldly and unabashedly acted to impair those provisions by calculated, systematic delay, to force Gerald to agree with a disposition of the Farm that was not included in the Trust instrument. The orphans' court fully acknowledged that Randall's conduct was so inappropriate as to be vexatious. As this is precisely the type of conduct that Albert sought to prevent by including the no-contest clause, the orphans' court erred as a matter of law in failing to hold that Randall triggered the clause to disinherit himself.

Moreover, regardless of the subjective intent Randall harbored in filing his motion to exclude, it is objectively beyond question that Randall asked the orphans' court to disinherit Gerald without having any basis in law or fact to support that Motion. The no-contest clause forbids all attacks upon the Trust provisions unsupported by probable cause, not just ones that were undertaken in earnest. It is beyond dispute that, in his motion to exclude, Randall asked the court, without probable cause, to invalidate the provisions of the Trust

pertaining to Gerald's one-third share. As such, the orphans' court erred in holding that Randall did not violate the no-contest clause.

Gerald next argues that the orphans' court erred in finding that Sarah did not violate the no-contest clause by conspiring with Randall to impair the Trust's provisions for Gerald's share. Pointing to Sarah's assistance detailed above, Gerald maintains that she also forfeited her share pursuant to the conspiracy portion of the clause and this Court's decision in In re Estate of Simpson, supra. We again agree with Gerald.

Randall had no reason to interfere with the distribution of the Trust according to its terms but for Sarah's insistence that her daughters ultimately inherit the Farm. Indeed, the orphans' court specifically noted that Randall originally agreed with Gerald, but Sarah convinced Randall to proceed contrary to the terms of the Trust. By assisting Randall in his vexatious course of conduct for the benefit of her children, at all times aware that the actions were not supported by the language of the Trust instrument, Sarah is just as culpable as Randall of seeking to impair the provisions of the Trust.

We reached a similar result in In re Estate of Simpson, supra. In that case, James brought an unfounded undue influence challenge to his grandmother's will. Two of his siblings, Denise and Mark, did not officially join the will contest, but assisted James by discussing the contest, deciding who would file it, retaining counsel, and thwarting attempts at negotiating a resolution. This Court recognized such conduct as "a collaborative effort

among James, Mark and Denise" to contest the will. Id. at 100. Therefore, we held that Mark and Denise also forfeited their shares for aiding in the contest, explaining that

> such a rule is beneficial for two reasons. First, the rule honors the idea that the will is to be construed so as to promote the intentions of the testator. Second, the rule promotes the favorable public policy of limiting costly, time-consuming litigation against the estate when such litigation is not founded upon probable cause but rather upon disappointment over amount received.

Id.

Sarah was disappointed that the Trust did not provide that her daughters would ultimately own the Farm, which she believed was her parents' desire. The record unequivocally demonstrates that Sarah not only aided Randall in his efforts to impair the immediate distribution provision in the Trust, but convinced Randall to do so despite his initial instincts to the contrary. To allow Sarah to avoid application of the no-clause because she did not file or sign any of the motions ignores the portion of the no-contest clause that prohibits a beneficiary from voluntarily assisting anyone in violating the clause, and is contrary to our precedent. Thus, we hold that the orphans' court erred in failing to apply the no-contest clause to forfeit Sarah's share of the Trust.

We next consider Gerald's contention that the orphans' court erred in opining that, even if Randall did violate the no-contest clause, Linda is entitled to Randall's share of the Trust principal. Gerald argues that this holding both is contrary to "the beneficiary scheme of the Trust[,]" and leads to the absurd

result of allowing Randall to violate the clause without suffering any adverse consequences. Gerald's brief at 43-44.

Pursuant to the no-contest clause, the Trust share of a beneficiary who violates the clause "shall be forfeited and shall be distributed as provided elsewhere herein as though he or she had predeceased me without issue[.]" Quinn Living Trust, 11/19/01, at 12-3. The clause further provides that if any person contests the Trust, "the right of that person or entity to take any interest in my Trust . . . shall cease, and the demise of that person (and his or her descendants) or entity shall be deemed to have occurred prior to my death." Id. at 12-5.

The orphans' court ruled that the Trust instrument was ambiguous, and that operation of the no-contest clause did not serve to disinherit Linda because, even if Randall were treated as having predeceased Albert without issue, Linda would take Randall's share under Article Eight, Section 1(a)(3), as she is not a descendent or issue of Randall.[5] Orphans' Court Opinion, 11/15/18, at 17-18. We cannot agree.

_____

[5] That section provides that if Randall "should die prior to the time that a distribution is directed to be made, [Randall's] interest in the balance of the trust share shall be distributed to his spouse, LINDA QUINN, if then living; or, if not, such beneficiary's interest in the trust share shall lapse." Quinn Living Trust, 11/19/01, at 8-2. In contrast, the provision for Sarah indicates that if she should die prior to distribution, her interest "shall lapse and my Trustee shall distribute the balance of the trust share to such beneficiary's then living descendants, per stirpes. If such beneficiary has no then living descendants, such beneficiary's trust share shall lapse." Id. Gerald's provision indicates

First, viewing the Trust instrument as a whole, Albert's plan for the disposition of his assets is clear: he wished for each of his children to receive one-third of the Trust principal upon his death, with exceptions for incapacity and other contingencies. If any of the children who had an heir known to Albert predeceased distribution of the Trust assets, that child's heir or heirs would receive the deceased child's share. Otherwise, the deceased child's share was to be divided among the remaining children. For example, while Sarah's share would go to her daughters if she predeceased the distribution, Gerald's share in such circumstances would be distributed to Randall and Sarah rather than to whomever stood to inherit or otherwise take through Gerald under the law.

However, if a beneficiary violated the no-contest clause, he or she is "specifically disinherit[ed]" and "the right of that person or entity to take any interest in my Trust . . . shall cease, and the demise of that person (and his or her descendants) or entity shall be deemed to have occurred prior to my death." Quinn Living Trust, 11/19/01, at 12-3, 12-5. Hence, if Sarah violated the clause, her share would be split between Randall and Gerald (or the beneficiaries at the time), rather than skip her and go to her daughters.

_____

that if he predeceases distribution, his share lapses. Id. at 8-3. Lapsed shares are to be reallocated among the remaining named beneficiaries. Id. at 8-1.

Despite the use of "descendants" and "issue" rather than "heir" or "contingent beneficiary," we conclude that, viewing the document as a whole, it is apparent that Albert's intent was that, if the disinheritance of a person were triggered, the share of any of his children should lapse rather than go to the alternate beneficiary. Nothing in the document suggests that Albert intended to disinherit his grandchildren upon Sarah's contest of the Trust, but not similarly remove his daughter-in-law as a beneficiary upon Randall's violation of the clause.

Second, the no-contest clause broadly indicates that any beneficiary who violates the clause forfeits the right to take any interest in the Trust. If Randall's spouse were to take his share despite Randall's violation of the clause, he would still be receiving not only a de facto, but a legal interest in the Trust assets. See Haentjens v. Haentjens, 860 A.2d 1056, 1059 n.7 (Pa.Super. 2004) ("Pursuant to 23 Pa.C.S.A. § 3501(a)(3), property acquired by bequest, devise or descent is not considered marital property. However, for purposes of equitable distribution, the increase in value of a non-marital asset constitutes marital property.").

Third, as discussed above, this Court has recognized the absurdity in allowing one beneficiary to abet another beneficiary in contesting an instrument without taking on the same risk of forfeiture. See In re Estate of Simpson, supra. Allowing Linda to take Randall's share in these circumstances would have the practical effect of eviscerating the no-contest

clause, as Randall in effect risked nothing by attempting to avoid distributing Gerald's rightful share to him. Therefore, we agree with Gerald that the orphans' court's resolution of any ambiguity in favor of Linda retaining her right to Randall's share is inconsistent with Albert's intent in light of his distribution scheme as a whole. See In re Cohen, supra at 1214 (providing that a settlor's intent is determined from an examination of "(a) all the language contained in the four corners of the instrument; (b) the distribution scheme; (c) the circumstances surrounding the testator or settlor at the time the will was made or the trust was created; and (d) the existing facts.") (cleaned up).

Accordingly, for the above-stated reasons, we hold that the orphans' court erred in overruling Gerald's objections to the proposed distribution of the remaining Trust assets. While we acknowledge that the result is harsh, it is consistent with Albert's intent that any beneficiary contesting his Trust forfeit his or her interest therein. We thus vacate the November 15, 2018 order to the extent that it does so, and remand for the orphans' court to enter an order providing for the Trust shares calculated in the final amended accounting for Sarah and Linda to be be distributed to Gerald.

In light of our resolution of these issues, we also vacate the portion of the order awarding Gerald a portion of his attorney fees. The no-contest clause provides that expenses to resist attempts to impair provisions of the Trust "shall be paid from the trusts created hereunder as expenses of

administration." Quinn Living Trust, 11/19/01, at 12-4. The orphans' court determined that Gerald's fees were not awardable under the Trust provision because (1) it held that Randall and Sarah did not violate the no-contest clause, and (2) not all of the fees Gerald requested were related to Randall's DNA motion and motion to exclude. Orphans' Court Opinion, 11/415/18, at 20. It awarded Gerald fees under 42 Pa.C.S. § 2503(7) as a sanction against Randall for his vexatious conduct. Specifically, it awarded approximately forty percent of the roughly $100,00 in fees and expenses claimed by Gerald at the hearing.

On appeal, Sarah and Linda argue that the award cannot stand because Gerald offered no evidence that the fees were reasonable, pointing to the acknowledgment of the orphans' court that there were "no bills on record from which the court can determine its reasonableness." Appellees' brief at 17. See also Orphans' Court Opinion, 11/15/18, at 20. On the other hand, Gerald argues that, if this Court agrees that Randall and Sarah violated the no-contest clause, then he should recover all of his fees from the Trust. Gerald's brief at 51.

We agree with Sarah and Linda that the award to Gerald without having the bills or any evidence of their reasonableness was an abuse of discretion. Therefore, we vacate that portion of the November 15, 2018 order awarding Gerald attorney fees. However, we need not remand for a new determination. Given our ruling that Randall and Sarah did violate the no-contest clause, we

agree with Gerald that his efforts to uphold the Trust provisions from their attack should be paid out of the Trust under the terms of the no-contest clause quoted supra. As we have held that Gerald is entitled to 100% of the remaining Trust principal, his attorney fees will be paid by Trust assets as they should without further action by the orphans' court. The matter thus resolves itself.

Order vacated. Case remanded for further proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/24/2020